## BARNWELL and others *against* MITCHELL.

Where one having funds in the hands of his correspondent, drew a bill on him for the amount, which the latter accepted, but failed to pay; it was held, in an action brought by the payee against the drawer, that the acceptor was a competent witness for the drawer.

A person liable for the costs of a suit, though his interest is otherwise balanced, is an incompetent witness.

The acceptor of a bill, with funds, who has failed to pay, is not liable for the costs of a suit against the drawer.

A bill was drawn and dated in *Alexandria,* on persons residing in *New-York,* who accepted it. The drawer's residence was, in fact, in *Fairfield* in *Connecticut;* which was publickly known, and was particularly known to one of the acceptors. The bill being protested for non-payment, immediately afterwards two letters containing notice, were put into the post-office at *New-York,* one addressed to the drawer at *Alexandria,* and the other addressed to him at *New-York,* and a third letter, addressed to him at *New-York,* was left at the compting-house of the acceptors. It was held, that although the holder was ignorant of the drawer's place of residence, yet as it did not appear that he had used due diligence to make enquiry, the notice given was insufficient.

*June 24.*

THIS was an action against the defendant, as drawer of a bill of exchange, dated *Alexandria,* (*D. C.*) *May* 21st, 1816, drawn on *Osborn & Reynolds* of the city of *New-York,* for the sum of 400 dollars, payable in current bank notes of that city, to the order of the plaintiffs, thirty days after date.

*New-Haven,*
*June,*
*1819.*

Barnwell
*v.*
Mitchell.

The cause was tried at *Fairfield, December* term, 1818, before *Edmond, Smith* and *Gould,* Js.

In the course of the trial, the defendant offered the deposition of *Osborn,* one of the acceptors, to prove the following facts. The defendant was the master, and part owner, of a coasting vessel. In the year 1816, as well as before and after that time, his residence was in the town of *Fairfield,* in *Connecticut;* which fact was well known to the deponent in *New-York.* He had no compting-house in *New-York;* his usual practice being, when there, to board and lodge on board his vessel. The bill was duly presented to *Osborn & Reynolds* for acceptance, and was by them accepted. When it became due, they were in funds to pay it, from the proceeds of shad delivered to them in *New-York,* by the defendant; which funds they continued to hold, until their failure in business, more than thirty days afterwards. They were sued on their acceptance; and judgment was obtained against them for the amount of the bill. To the admission of this testimony, the plaintiffs objected, on the ground that the deponent was interested in the event of the suit; but the court overruled the objection, and the deposition was read to the jury.

In committing the cause to the jury, the court instructed them, that if they should find from the evidence, that the bill was drawn by the defendant, duly presented and accepted by the drawees; that it was regularly and seasonably presented for payment, by the plaintiffs, or their authorised agent; that the acceptors had sufficient funds in their hands, belonging to the defendant, to pay the bill, when it fell due, and at the expiration of the last day of grace; it would be proper for the jury, in the next place, to enquire whether due and seasonable notice of non-payment and protest had been given to the defendant. Whether such notice was given, or not, would depend on questions of fact, which they must decide. On this point, it was claimed, on the part of the plaintiffs, that the bill was drawn at *Alexandria;* that the drawees were merchants in *New-York;* that the defendant was in their employ; that he had not, to the plaintiffs' knowledge, any settled place of abode, but that he, in fact, resided more generally in *New-York* than elsewhere; and that the plaintiffs, by their agents in *New-York,* made out three letters, each containing the proper notice for the defendant; one of which, addressed to the defendant in *New-York,* they lodged at the compting-house

of *Osborn & Reynolds*; one, addressed to the defendant in *Alexandria*, they placed in the post-office in *New-York*, in season to be sent by the next mail after the last day of grace; and one, addressed to the defendant in *New-York*, they placed in the post-office in *New-York*, immediately after the last day of grace expired. On the part of the defendant, it was claimed, that from his birth he was, and was known to the public to be, an inhabitant of *Fairfield* in *Connecticut*, making his home and having his residence there, and nowhere else; and that he was in fact in *Fairfield*, at the time, and after, the last day of grace expired. And the court on this point charged the jury, that if they should find the facts claimed by the plaintiffs to be supported by the evidence, although neither the letter addressed to the defendant at *Alexandria*, nor the one left at the compting-house of *Osborn* & *Reynolds*, would be good notice to the defendant, yet the letter addressed to the defendant in *New-York*, and put into the post-office in *New-York*, would be good and sufficient notice to him. But if the jury should not find, that the defendant was a resident of *New-York*, as claimed by the plaintiffs, but should find, that he was a known inhabitant of *Fairfield*, and actually residing there, as claimed by the defendant, he ought to have had personal notice, or notice by letter, put into the post-office seasonably, addressed to him in *Fairfield*.

The jury returned a verdict for the defendant; and the plaintiffs moved for a new trial, on the ground that the deposition of *Osborn* was improperly admitted, and that the jury were misdirected.

*Sherman*, in support of the motion, contended, 1. That *Osborn* was interested in the event of the suit; and was, therefore, an incompetent witness. As *Osborn & Reynolds* had the funds of *Mitchell* in their hands, it was their duty to accept and pay the bill. If, through their default, the holders are obliged to resort to *Mitchell*, they must indemnify him. The amount of the judgment against *Mitchell*, including *costs* as well as damages, will be the measure of his claim against *Osborn & Reynolds*. But to the holders of the bill, *Osborn & Reynolds* are liable only for its contents. They are, therefore, interested to defeat a recovery in the present action: for if they succeed, they will exonerate themselves from a bill of costs, to the payment of which they will otherwise be liable. *Jones*

*New-Haven,*
June,
1819.

Barnwell
*v.*
Mitchell.

*New-Haven,*
June,
1819.

*Barnwell*
*v.*
Mitchell.

v. *Brooke,* 4 *Taun.* 464. *Pierce* v. *Butler,* 14 *Mass. Rep.* 303. 312. It is now perfectly settled, whatever doubts may have formerly been expressed in one or two cases, that a person liable to the costs of a suit, has an interest in the event, which renders him an incompetent witness. *Phill. Ev.* 46. *Townsend* & al. v. *Downing,* 14 *East,* 565.

2. That the jury were misdirected with respect to notice. In the first place, the notice given was all that the law requires, upon the facts admitted. *Chapman* v. *Lipscombe,* 1 *Johns. Rep.* 294. Secondly, the court ought, at any rate, to have submitted to the jury, upon the evidence before them, the question of fact, whether the plaintiffs had used due diligence in making enquiry for the defendant's place of residence. It was manifestly incorrect to instruct the jury, as matter of law, that if the defendant's residence was in *Fairfield,* the plaintiffs were bound, either to give him personal notice, or to put a letter into the post-office, containing notice, addressed to him at *Fairfield :* for if the plaintiffs were ignorant of his place of residence, and used due diligence to find it òut—facts of which they gave evidence, and which they claimed to have proved—they were by law excused from giving such notice. *Bateman* v. *Joseph,* 2 *Campb.* 461. S. C. 12 *East,* 433.

*Hatch* and G. *Tomlinson,* contra, contended, 1. That *Osborn* was a competent witness. In the first place, he could not be affected, in any degree, by a recovery against the defendant. Before the acceptance, he was liable to account with the defendant for the funds in his hands ; after the acceptance, he was liable to pay the bill, according to his acceptance ; and in both cases, this was the extent of his liability. Secondly, if the defendant might, in a subsequent action against *Osborn,* recover of him the *costs* of this suit, he would still be a competent witness. *Birt* & al. v. *Kershaw,* 2 *East,* 458. *Staples* v. *Okines,* 1 *Esp. Rep.* 332. *Cushman* v. *Loker,* 2 *Mass. Rep.* 106, 108.

2. That the charge as to notice was correct. It was clear, from the facts before the court, that the defendant's place of residence was either in *New-York* or *Fairfield :* if in the former, personal notice was necessary ; if in the latter, notice by mail, addressed to him at that place. The place of the drawer's residence, and not the place where the bill is drawn and dated, is that to which notice is to be directed. *Fisher* v.

*Evans*, 5 *Binn.* 541. The only questions of fact agitated on the trial, relating to this point, were, first, what was the defendant's place of residence ; and secondly, was notice given *at that place.* No diligence in *making enquiry*, was proved, or claimed ; nor was any excuse shewn for the want of strict notice, except sending letters in wrong directions. The charge of the court was adapted to the case which was presented.

HOSMER, Ch. J. The bill of exchange, in this case, has been denominated an *accommodation* bill ; but on this point the facts have been misconceived. The defendant had funds in the hands of *Osborn & Reynolds*, and drew on them in favour of the plaintiffs. This is the whole transaction, as relative to the question, whether the drawees were in the nature of sureties for the drawer. Then, viewing the bill as a common mercantile draft, accepted, and not paid, the only obligation, in any event, resting on *Osborn & Reynolds*, was to pay the holder the sum for which it was drawn ; and any interest that should accrue. This, by the acceptance of the bill, they have expressly contracted to do to the payees ; and by construction of law, to the drawer, should he be obliged to take it up ; but the measure of damages, in both cases, is equal. *Staples* v. *Okines*, 1 *Esp.* 332. *Simmonds* v. *Parminter &* al. 1 *Wils.* 185. *Simpson* v. *Griffin*, 9 *Johns. Rep.* 131. It was the fault, or misfortune of the drawer, in permitting himself to be subjected to costs ; and he has no contract of indemnity, on the part of *Osborn & Reynolds*, to which he can resort. Were the facts so, that he, in one event, would be obliged to pay the debt only, and in another, the debt and costs, it would be his interest, most unquestionably, to exonerate himself from the greater sum. The cases of *Ilderton* v. *Atkinson*, 7 *Term Rep.* 476. and *Birt & al.* v. *Kershaw*, 2 *East.* 458. have been considered as establishing a different principle ; but they have been overruled, by the recent case of *Townend &* al. v. *Downing*, 14 *East*, 565. And how this could have ever become a question, after the numerous decisions, which have determined, (what the common sense of every person of sound mind is equal to) that liability to the costs of an action, is an immediate interest, it is difficult to conceive. *Vansant* v. *Boileau &* al. 1 *Binn. Rep.* 444. *Ball* v. *Bostock*, 1 *Stra.* 575. *Cheek* v. *Roper*, 5 *Esp. Rep.* 174. *The King* v. *The Governors* &c. *of the poor of St.*

*Mary Magdalen,* &c. 3 *East,* 7.    *Butler* v. *Warren,* 11 *Johns. Rep.* 57.    *Owen* v. *Mann,* 2 *Day,* 403.    *Trelawney* v. *Thomas,* 1 *H. Bla. Rep.* 506. The interest of *Osborn* was equally balanced; and the court were correct in receiving his testimony.

Whether due notice of non-payment was given, is a question of great importance to the mercantile world. It strikes at the root of bills of exchange. If courts will indulge a laxity of practise on this subject, and by means of it, the drawers of bills are rendered less secure, this species of commercial currency must be partially affected. The payees were bound to use due diligence. They had every inducement to make enquiry relative to the drawer's residence; as the various notices, sent in different directions, abundantly testify. His place of abode, it is said, was publicly known; by which I understand, that it was known by many in the city of *New-York,* where the enquiry must necessarily have been made. Now, in the midst of light, surrounded by persons who could give the requisite information, the plaintiffs thought proper to fold their arms in silence, and send their notices in such directions, as that they could not reasonably anticipate they would ever be received. This is not due diligence. It is no sufficient reply, that they did not know from whom the desired information might be obtained. They had reasonable grounds to believe, that the master of the vessel, navigated from *New-York,* whose draft *Osborn & Reynolds* had accepted, was known by them, and by other persons in the place. The case of *Chapman* v. *Lipscombe* & al. 1 *Johns. Rep.* 294. is no authority for the plaintiffs. The holder of the bill was ignorant of the defendants' place of residence, and " made diligent enquiry after them, at the banks in *New-York,* and elsewhere, and the information was, that they resided at *Norfolk.*" Pursuant to the information acquired, a notice was sent, and, with certain correctness, it was held sufficient.

The other Judges were of the same opinion.

New trial not to be granted.