LLOYD and others *against* HOLLY.

*A.*, being the general owner of certain hat bodies, which were in the possession of *B.*, who had manufactured them, and who had a lien on them for the balance of his account, amounting to 491 dollars, made and delivered to *C.*, on the 3rd of *April*, a writing in these words : " For value received, I hereby assign, transfer and sell to *C.*, in payment of my debt to him, all the hat bodies belonging to me, estimated at from 1600 to 2000, in the possession of *B. ; C.* paying to *B.* whatever balance is justly due to him from me for his labour expended upon said bodies, so far as he has a lien on them, for said balance." Of this assignment *C.* gave notice to *B.* on the 8th of *April ;* and in *October* following, *C.* tendered to *B.* 95 dollars, in satisfaction of his lien, and demanded the property, which *B.* refused to deliver. Immediately after notice of the assignment, *B.* attached these hat bodies for his balance against *A. ;* and in *November*, while they were in the possession of the officer, under such attachment, *C.* brought trover against the officer. Held, that the assignment to *C.* was conditional ; and that without payment or tender of the balance due to *B.* no title was acquired by *C.*, and consequently, he could not recover.

*Qu.* Whether if a person having a lien on the property of another in his possession, for the balance of his account, attaches that property, in consequence of which it is put in custody of the law, he thereby waives or relinquishes his lien.

THIS was an action of trover, for 2000 hat bodies, by writ dated *November* 4th, 1828.

The cause was tried at *Fairfield, December* term, 1830, before *Hosmer*, Ch. J.

On the 3rd of *April*, 1828, *William Harrington* was the general owner of 1600 of the hat bodies mentioned in the plaintiffs' declaration ; and he, at the same time, owed the plaintiffs a debt of 293 dollars, 18 cents, being the balance of their mutual book accounts. The plaintiffs claimed title to the hat bodies in question under an assignment from *Harrington*, made on the 3d of *April* 1828, in the following terms : " For value received, I hereby assign, transfer and sell to Messrs. *Lloyd & White*, merchants in fur and wool in the city of *New-York*, all the hat bodies belonging to me, now in the possession of *Alfred Pennoyer* of *Darien* in *Connecticut :* And I hereby authorize them to demand and receive all said hat bodies of said *Pennoyer*, the number thereof not being known, but estimated at from 1600 to 2000 ; they paying to said *Pennoyer* whatever balance is justly due to him from me for his labour ex-

*Fairfield,*
*June,* 1831.

Lloyd
*v.*
Holly.

pended upon said bodies, so far as he has a lien on said bodies, or a part thereof, for said balance. The said bodies hereby assigned to be appropriated to payment of my debt to said *Lloyd & White. Stamford, April* 3rd, 1828. [Signed.] *William Harrington."*

The hat bodies, which were in the possession of *Pennoyer,* on the 3rd, remained in his possession until and through the 8th of *April,* 1828. In the course of that day, the plaintiffs notified *Pennoyer* of the assignment, giving him to understand, that they should hold him responsible to them for the hat bodies beyond his legal lien thereon.

On the 11th of *October,* 1828, the plaintiffs tendered to the defendant the sum of 95 dollars, in satisfaction of the lien on the hat bodies mentioned in the assignment, and demanded them ; which he refused to deliver.

Some time in the month of *January* 1826, *Pennoyer,* having a large claim against *Harrington* for the manufacture of hat bodies, attached certain wool and hat bodies belonging to *Harrington* in *Pennoyer's* possession ; and afterwards, in the course of the same month, it was agreed between them, that *Pennoyer* should withdraw his suit, and continue to manufacture hat bodies for *Harrington* from that time to the 1st of *April* following, when *Harrington* was to pay the amount which should then be due to *Pennoyer,* and on failure of such payment, *Pennoyer* should have a lien on all the wool and hat bodies of *Harrington* in *Pennoyer's* possession, which should be left with *Pennoyer* to secure the payment of such debt.

On the 8th of *April,* 1828, *Pennoyer,* after he had received notice of the assignment, prayed out a writ of attachment against *Harrington,* which, on the oath of *Pennoyer,* was directed to the defendant, as an indifferent person, to serve ; but the certificate of the magistrate who directed it, did not shew, that the oath was administered in the words prescribed by the statute. This writ of attachment, the defendant, by *Pennoyer's* direction, levied on the hat bodies, which had been made by *Pennoyer,* for *Harrington,* under said agreement, before the 1st of *April,* 1828, and took them into his possession. Soon afterwards, in the month of *April, Pennoyer,* for a valuable consideration, assigned his demand against *Harrington,* which then amounted to 491 dollars, 13 cents, and which had arisen exclusively from the manufacturing of hat bodies, previous to the 1st of *April* 1828, to *Simeon H. Minor* Esq. The proper-

ty so attached remained in the custody of the defendant, from the time of the levy until after the commencement of this suit. In *February*, 1829, *Minor*, in the name of *Pennoyer*, recovered a judgment in said suit against *Harrington*, for the amount of said debt and costs, and caused an execution issued on such judgment to be levied on the hat bodies, which were sold at the post, on the 1st of *April* 1829. From *January* 1828, to the commencement of this suit, *Harrington* was insolvent.

Upon these facts sundry points arose, on which the parties respectively prayed for a direction to the jury in their favour; but some of these it is not now necessary to state. Among other matters, (here omitted,) the Chief Justice instructed the jury, That the parting, by *Pennoyer*, with the possession of the hat bodies, not to a servant or agent to hold for him, but by giving up the uncontroulable possession to another, without notice of the lien upon them, was in law a waiver and extinguishment of the lien: That if *Pennoyer* had, at the date of the assignment to the plaintiffs, and until notice thereof, a lien on the hat bodies in security of his demand against *Harrington*, the plaintiffs, by their assignment, were not bound to pay to *Pennoyer*, or his assignee, any part of his demand, if the lien was waived or extinguished, and did not subsist at the time of their tender: That *Pennoyer's* proceeding by attachment was inconsistent with an intentional retainer of the possession and with a continuance of the lien; by the voluntary selection of a new remedy, and the surrendering up of the possession to the defendant beyond his controul.

The jury gave a verdict for the plaintiffs; and the defendant moved for a new trial for a mis-direction.

*N. Smith* and *Betts*, in support of the motion, contended, (*inter alia*,) 1. That the writing executed by *Harrington*, did not vest in the plaintiffs a title as general owners; as this transfer was a *conditional* one, and the plaintiffs never performed the condition. *Wheeler* & ux. v. *Walker*, 2 *Conn. Rep.* 196.

2. That *Pennoyer* had not waived or relinquished his right to have his debt satisfied out of the property. In the first place, this was a *conventional* lien, in contradistinction from a *legal* one; and the former is not lost, as the latter generally is, by parting with possession of the property. Secondly if *Pennoyer's* lien be considered as a legal one, it was not lost, by the service of a *void* attachment, as it was a parting with the pos-

session by *mistake.* Thirdly, if the attachment was not void, still as the property was not given up to another claimant, but was merely delivered into the custody of the law, for *Pennoyer's* benefit, there was not such a parting with possession as will defeat even a legal lien. *Montague on Liens, passim.*

*Hawley,* contra, contended, 1. That the bill of sale from *Harrington* to the plaintiffs, made them the general owners of the property; and their title, as general owners, does not depend upon paying *Pennoyer* his demand. They took, by the assignment, precisely *Harrington's* interest. Nor could their delay to tender, even while *Pennoyer's* lien continued, defeat their title. They did not, by that delay, cease to be general owners. No third person has been deceived by the delay, nor misled by it into the acquisition of a title at war with that of the plaintiffs.

2. That the defendant had no right to hold the property against the plaintiffs. In the first place, he could not hold by virtue of *Pennoyer's* lien; for that was lost by the attachment. *Pennoyer* voluntarily parted with the possession, not to the defendant as his agent, to preserve the lien, and subject to his order, but for the acquisition of a new security, inconsistent with the lien. The property was put beyond *Pennoyer's* controul, and was held in custody of the law, to await judgment, and then to be sold at the post, *unincumbered.* But thirdly, if the lien still subsisted, it furnishes the defendant no defence. *Pennoyer's* lien was not transferred to the defendant. He could hold only by virtue of the attachment. A lien is a personal privilege; and none but the person having it, can set it up as a defence. *Holly* v. *Huggerford,* 8 *Pick.* 73.

DAGGETT, J. There appears to have been much discussion, at the circuit, of points and principles, which, in the light in which I view the case, are not important to a right decision of it. It was there decided, that the defendant had lost his lien in this property, by his attempted attachment of it, thereby voluntarily resorting to a new remedy. Be that point as it may, the plaintiffs are bound, by the clear principles of law, to prove property in themselves, or they cannot recover. This, in my opinion, they have not done.

The proof consists entirely of a bill of sale or assignment of it, dated the 3rd of *April,* 1828; there never having been any actual possession of it in the plaintiffs. This bill of sale is very

Fairfield,
June, 1831.

Lloyd
*v.*
Holly.

short, and not of doubtful import. It declares, that *William Harrington*, who then was agreed to be the general owner, did *sell* to the plaintiffs the hat bodies in question, then in the possession of *Alfred Pennoyer* and others, with authority to receive the same, " they paying to said *Pennoyer* whatever balance is justly due to him from *William Harrington* for his labour expended upon said bodies, so far as he has a lien on said bodies, or a part thereof, for said labour." Of this assignment the plaintiffs gave notice to *Pennoyer*, on the 8th of the same *April;* and on the 11th of *October* thereafter, the property being then in the possession of *Pennoyer*, the plaintiffs tendered to him *ninety-five dollars* in satisfaction of his lien, and demanded the property, which he refused to deliver. It was not pretended, that this sum was equal to the lien, which *Pennoyer* had on the property, on the 3rd of *April*, the date of the assignment or bill of sale.

On the 8th of *April*, and after the plaintiffs gave notice to *Pennoyer* of the assignment, the property was attached, by the defendant, as an indifferent person, to whom the writ was specially directed, and taken into his possession, upon a process against *Harrington*, the vendor, in favour of *Pennoyer*. Judgment was recovered against *Harrington*, on that process; and the property was taken, by an execution, which issued on that judgment, and sold at the post. While the defendant was thus in possession of the property, this suit is instituted. It is now said, that this attachment, by which the property was taken, was void. Be it so ; still the question recurs, have the plaintiffs shewn any right to it by virtue of the assignment ? They insist, that their right became absolute, upon the execution of the instrument ; that the word *sell* imports an unconditional transfer of the property ; and that draws after it a constructive possession. I think otherwise. " They paying to *Pennoyer* his balance," if not a condition *precedent*, certainly imports a *concurrent* act to be done by the plaintiffs, or, at least, an attempt to pay that balance, before any right could vest in them. The word *paying*, according to the late Chief Justice *Swift*, in the case of *Wheeler* v. *Walker*, 2 *Conn. Rep.* 196. 199. clearly imports a condition. In the same case, says the present Chief Justice : " The words which constitute a condition, may be various. In particular words there is no magic : their operation depends on the sense they carry." The same doctrine is recognized in the case of *Judd* & al. v. *Bushnell* & al. 7 *Conn. Rep.* 205.

*Fairfield,*
June, 1831.
_____

Lloyd
*v.*
Holly.

The parties to this contract might have agreed, that the property should be transferred immediately, and the vendor might have accepted the promise of the plaintiffs to pay the debt due to *Pennoyer;* but the contract made was different; and the court, in view of it, can only say, that here could be no transfer without payment or tender of the balance due to *Pennoyer;* and that, in the absence of all proof of such payment or tender, no title has been acquired by the plaintiffs.

Therefore, let there be a new trial.

WILLIAMS and BISSELL, Js. were of the same opinion.

HOSMER, Ch. J. dissented.

PETERS, J. was absent.

New trial to be granted.