*Litchfield,*
*June, 1836.*

Seymour
*v.*
Harvey.

## SEYMOUR *against* HARVEY and another.

An imprisoned debtor being dangerously sick, the creditor gave a writing addressed to the gaoler, in these words : " We hereby consent, that *H,* [the debtor] be removed from the gaol limits, during such time as may be necessary to his recovery, in the opinion of his physicians ; you being answerable for his return, whenever he shall be deemed in a suitable situation as relates to his health." *H* was removed ; and in an action afterwards brought on the bond given for the liberties of the prison, it was held, that such writing was not a licence to depart the prison ; the language of it importing a condition, according to which the gaoler was not authorized to suffer the departure of *H,* without, at the same time, making himself responsible for his return.

In such action, a witness introduced by the defendant, testified, that in a conversation with *W,* one of the creditors, he expressed his satisfaction and gratification that *H* had departed. To such testimony the plaintiff objected, insisting that the witness should state what *W* said. To this the judge assented, and so told the witness ; who then said, he did not believe he could repeat one word of the conversation. In addressing the jury, the plaintiff's counsel claimed, that the testimony of this witness ought not to be taken into consideration, and that the court should so instruct them ; but the judge, in summing up, took no notice of such testimony. Held, that such omission laid no foundation for a new trial ; for, 1. the testimony was not inadmissible, as a witness, who cannot recollect the words of a conversation, may state what were the ideas expressed ; 2. if the testimony was inadmissible, the plaintiff had no reasonable ground of complaint, as it was virtually excluded, so that the jury must have understood that it was not before them, and it was not necessary for the judge, in his summing up, to reiterate the opinion he had already expressed.

The defendant in such action having introduced a witness to prove a parol licence by *W,* one of the joint creditors, the defendant offered *W,* as a witness, to disprove such testimony, accompanied by releases from the plaintiff and his attorneys. *W* being examined by the defendant as to his interest, said, that while the cause was on trial, he had made a parol agreement with *Y,* the other joint creditor, that *Y* should have the whole demand against the debtor, and should pay him, *W,* one fourth part of the amount ; and that it was *W's* understanding, that *Y* should defray all the expenses of the suit ; but that no writing had been signed, and nothing paid or delivered, by either party. Held, that *W* was not a competent witness ; for it may well be questioned, whether, upon this state of facts, there was a legal assignment by *W* of his interest in the execution ; but if there was such assignment, it was not explicitly shewn, that *W* was discharged from the costs which had accrued in the cause ; and it is well settled, that a liability for costs only, creates an interest, which goes to the competency of the witness.

THIS was an action on a bond, executed by *Warham Harvey,* as principal, and *John Adam,* as surety, to *Ozias Sey-*

*mour* Esq., sheriff of *Litchfield* county; the condition of which bond was, that said *Harvey* being confined in *Litchfield* county gaol, by virtue of an execution, amounting to 63 dollars, 16 cents, in favour of *James C. Wadsworth* against him, should keep himself within said prison, and not depart therefrom, until lawfully released. The defendant set out the bond and condition, and pleaded performance generally. The plaintiff, in his replication, assigned, as a breach, the escape of *Harvey* from prison, in his own wrong, and not with the licence or permission of the execution creditor; on which issue was joined.

The cause was tried, on this issue, at *Litchfield, August* term, 1835, before *Waite*, J.

The execution mentioned in the condition of the bond, was owned, by *James C. Wadsworth*, the creditor therein named, and his brother *Amos Wadsworth*, co-partners in trade; and the present suit was instituted and prosecuted, by them, for their joint benefit. During the imprisonment of *Harvey*, he was dangerously sick; and his friends, for the purpose of promoting his recovery, were desirous of having him removed to some place beyond the limits of the prison. Accordingly, *John R. Landon* Esq., in their behalf, applied to *James C. Wadsworth*, for liberty to have him removed; who gave his consent to such removal, provided his brother *Amos* would give his consent; and referred *Landon* to said *Amos* for such liberty. *Amos* at first refused; but afterwards, made and delivered to *Landon* a writing, in the following terms : " Mr. *Albert Sedgwick*—Sir, we hereby consent, that *Warham Harvey* be removed from the gaol limits, during such time as may be necessary to his recovery, in the opinion of his physicians; you being answerable for his return, whenever he shall be deemed in a suitable situation as relates to his health; reference being had to his commitment on execution in favour of *James C. Wadsworth. Litchfield, Oct. 5th,* 1833. [Signed.] *J. C. & A. Wadsworth.*" *Landon* took this writing and carried it to *Sedgwick*, the keeper of the prison, who handed it to an agent of *Harvey*, then present, saying, that if the writing would discharge *Harvey*, he might take advantage of it; but that he, (*Sedgwick*,) did not mean to assume any responsibility. The writing was then handed to *Harvey*; and the next day he

went off from the liberties of the prison; which was the departure complained of, by the plaintiff, in his replication.

*Landon* being called as a witness, in the course of his examination, was enquired of, by the defendants' counsel, what conversation he had had with *James C. Wadsworth* relative to *Harvey's* departure; to which he replied, that in a conversation with *James C. Wadsworth*, after the departure, he expressed his satisfaction and gratification that *Harvey* had gone off the limits. The plaintiff's counsel thereupon objected, and claimed, that the witness ought to state what *Wadsworth* had *said;* to which the judge assented, and so told the witness. The witness replied, that he did not believe, that he could repeat one word of the conversation.

The defendants afterwards called one *George Matthews*, as a witness, who testified, that when the writing was delivered, *Harvey* was living with him; and that *James C. Wadsworth* came in, at that time, and said to *Harvey*, " you are at liberty." The plaintiff's counsel admitted, that if *Ma thews'* testimony was true, he could not recover, but claimed that it was untrue; and for the purpose of contradicting this witness, offered *James C. Wadsworth* as a witness, accompanied with releases from the plaintiff and the attorneys employed by him, of all demands in their favour against the witness, on account of any matters growing out of the suit. The defendants then proceeded to enquire of him relative to his interest; and he stated, that he had made a parol agreement with his brother *Amos*, that the latter should have the whole demand against the defendants, and should pay him, (*James*,) one fourth part of the amount; and that it was his, (*James'*) understanding, that *Amos* should defray all the expenses of the suit; but that no writing had been signed, and nothing paid or delivered, by either party. The defendants thereupon objected to the competency of this witness, claiming, that his interest had been proved, by proper testimony; and that notwithstanding the release and agreement, no sufficient evidence had been adduced, that that interest had been removed. Of this opinion was the judge, who excluded the witness accordingly. No other evidence was offered on the part of the plaintiff.

The plaintiff's counsel, in their argument to the jury, claimed, that the testimony of *Landon* relative to the conversation with *Wadsworth*, ought not to be taken into consideration, by

*Litchfield*,
June, 1836.
—————
Seymour
*v.*
Harvey.

the jury ; and that the judge ought so to instruct them. The judge, in summing up the evidence in the cause, and in his charge to the jury, took no notice of this testimony, but told them, that if they should find, that *James C.* and *Amos Wadsworth*, or either of them, gave *Harvey* licence and permission to depart from the limits of the prison, they might find the issue for the defendants.

The jury returned a verdict for the defendants ; and the plaintiff moved for a new trial, for error in the interlocutory decisions of the judge, and for a misdirection.

*L. Church* and *Sanford*, in support of the motion, contended, 1. That the writing signed by the *Wadsworths*, gave *Harvey* no right to depart from the prison limits ; because it was to take effect only upon condition that the gaoler would be answerable for his return ; and this undertaking the gaoler declined. *Com. Dig. tit.* Condition. D 3. D 1. *Co. Litt.* 206. *a.* 1 *Sw. Dig.* 94. *Lloyd* v. *Holly*, 8 *Conn. Rep.* 498. *Wheeler* v. *Walker*, 2 *Conn. Rep.* 196.

2. That *Landon's* testimony as to the conversation with *James C. Wadsworth*, ought to have been altogether excluded from the consideration of the jury. A witness is to state *facts*, not conclusions or inferences. 1 *Phill. Ev.* 227. 3 *Stark. Ev.* 1736. He must give a conversation, either in the words used, or in substance. But *Landon* gave his own conclusions or inferences only. The judge, indeed, told him, that he ought to state what *Wadsworth* had said ; but this was after the improper evidence had gone to the jury ; and they were not instructed to disregard it.

3. That *Wadsworth* was a competent witness; his interest having been discharged, by the assignment and release. His testimony ought to have been received to prove the assignment. 3 *Stark. Ev.* 1736. *Bunter* v. *Warre*, 1 *Barn. & Cres.* 689. (8 *Serg. & Lowb.* 186.) *Goodhay* v. *Hendry*, 1 *Moo. & Malk.* 319. (22 *Serg. & Lowb.* 321.)

*T. Smith* and *O. S Seymour*, contra, contended, 1. That the writing was an absolute discharge of *Harvey*. The intimation to the gaoler, that the creditor expected him to be answerable for his return, was not a condition precedent. There was no precedent act to be performed by the gaoler. He was

to do no act binding himself to retake *Harvey.* The qualification in the first clause of the writing, and the stipulation in the last, are repugnant to the grant of licence to depart from the limits, and as such, are void. If the creditor assented to the departure, he could not defeat the legal consequence of that assent, by any stipulation by way of qualification or condition. Where a writing is addressed, by the creditor to the gaoler, directing him to release a prisoner, it is *per se* a discharge.

2. That the course taken by the judge in relation to the testimony of *Landon* regarding the declarations of *Wadsworth*, was unexceptionable. In the first place, it is not necessary that the witness of a conversation should swear to the precise words used : he may state the *substance* of what was said. But secondly, in this case the judge sustained the objection of the plaintiff, and in effect excluded the testimony. The jury must have so understood it.

3. That *James C. Wadsworth* was an incompetent witness. In the first place, the case is within the principle of *Skillinger* v. *Bolt,* 1 *Conn. Rep.* 147. The court may properly treat releases and contracts made with a view to qualify a a party to swear in his own cause, as " a sham business, made up for the occasion." Secondly, the agreement made between these joint creditors did not transfer the interest of one to the other. It was executory ; and *Amos* could not compel execution until he paid the stipulated consideration. As a sale, it was not consummated. There was no payment, no delivery, no tender, no earnest, no time fixed for performing the contract ; and consequently, neither party was bound. Besides, *James* remained responsible for the expenses of the litigation : he was immediately responsible to the witnesses ; and the agreement of *Amos,* if there was one, was nothing but a mere contract of indemnity.

BISSELL, J. The only question in the court below, was, whether *Harvey,* one of the defendants, had a license from the creditor in the execution to depart from the prison liberties.

It is contended, on the part of the defendants, that the paper offered and read in evidence, amounts to such license ; and if this claim be well founded, it becomes unnecessary to consider the other questions raised in the case. But we are satisfied, that the writing in question did not give *Harvey* an unqualifi-

*Litchfield,*
*June, 1836.*

Seymour
*v*
Harvey.

ed license to depart the prison.  It was not directed to him; but to the gaoler; and it authorized him to permit *Harvey* to depart, "*he being answerable for his return.*"

Upon every sound rule of construction, this language imports a condition; and gave to the gaoler no authority to suffer the departure of the prisoner, without, at the same time, making himself responsible for his return.  *Wheeler* v. *Walker*, 2 *Conn. Rep.* 196.  *Lloyd* v. *Holley*, 8 *Conn. Rep.* 491.

As then the writing contains, in itself, no such licence, we are brought to consider the other questions presented by this record.

The first relates to the testimony of *John R. Landon,* Esq.

This witness, among other things, testified, that in a conversation with *James C. Wadsworth,* the creditor in the execution, *Wadsworth* expressed his "satisfaction and gratification" that *Harvey* had departed from the prison limits.  To this testimony the plaintiff's counsel objected; and insisted, that the witness should state what *Wadsworth* said.  To this the court assented, and so told the witness; who then said, he did not believe he could repeat one word of the conversation· In addressing the jury, the plaintiff's counsel claimed, that this part of *Landon's* testimony, ought not to be taken into consideration; and that the court should so instruct them.  The motion states, that in summing up, the judge did not notice this testimony.  Upon this branch of the case this single enquiry arises: does this omission of the judge to instruct the jury, as claimed, lay any foundation for a new trial?  We think not. In the first place, was the testimony inadmissible?  The objection to it, amounts to this : If a witness states that a precise idea was conveyed in a conversation, but is unable to give the language in which it was conveyed, his testimony is not to be received.  We know of no such rule, either in theory or practice.  The general principle, which has been urged, that a witness is to be examined as to *facts*, and not as to his inferences or conclusions from facts, is unquestionably correct.—But the principle does not apply.  It does not sustain the objection. The witness did not state the inferences which he drew from the conversation.  But he did state, that the party *expressed* his satisfaction, although the *form of the expression* was not remembered.  Now, as has been remarked, we know no of rule, within which testimony of this character is to be excluded.

And we believe, that in practice, such testimony is almost daily admitted. *How much* it proves, how much it ought to weigh with a jury, is another, and a very different question.

That the judge did not remark on the weight of the evidence, is surely no ground for a new trial. *Swift v. Stevens*, 8 *Conn. Rep.* 491.

But again; even if the testimony were not admissible; what is there, of which the plaintiff can reasonably complain? He objected to the testimony; and the case finds, that his objection was assented to, by the judge. Was not the testimony eventually excluded? And must not the jury have understood, that it was not before them? Was it necessary for the judge, in his summing up, to reiterate the opinion he had already expressed? We think not.

Another, and perhaps, a question of more difficulty, remains to be discussed, *viz.* Was *James C. Wadsworth* properly rejected, as an incompetent witness?

It should here be remembered, that he was the creditor in the execution; and although not, nominally, a party to the record, was yet the real party in interest. There is, therefore, no legal presumption in favour of his competency. He undertook, during the progress of the trial, to discharge himself of that interest, and thus to qualify himself as a witness. Does it appear from the motion, that enough was done, to render him competent?

In the first place, he produced a discharge from the plaintiff on the record, and also from his counsel. This, confessedly, was not sufficient: for he still would have been entitled to the fruits of the judgment, had one been recovered.

And in regard to every other act done, it may be remarked, that all depended on the testimony of *Wadsworth* himself, as the facts were drawn from him, by an examination by the defendant's counsel.

The judge on the circuit might well have doubted, whether the transaction to which he testified, was *bona fide.* He might well have thought, that no special indulgence was to be extended to the statements of the real party, thus endeavouring to qualify himself to become a witness, during the progress of the trial, and whose testimony was to meet some exigency, which perhaps, unexpectedly, occurred in the cause.

But admitting his statements to be true, and that it is competent for this court to review the inference which the judge on the circuit drew from them, still the question arises, is their effect such as to remove his interest? He stated, that while the cause was on trial, he had made a parol agreement with *Amos Wadsworth*, his former partner, and who was jointly interested with him in the execution, that the said *Amos* should have the whole demand against *Harvey*, and should pay him, one fourth part of the debt; "*and that it was his understanding, that Amos should defray all the expenses of the suit:*" that no writing was executed, and nothing paid or delivered, by either party.

It may well be questioned, whether upon this state of facts, there was a legal assignment, by *James C. Wadsworth*, of his interest in this execution. There was, indeed, a parol agreement, that *Amos* should have the debt against *Harvey*, at a stipulated price; but no written assignment was made. There was no delivery, and nothing was paid.

Was here any thing more than a mere executory agreement, which might very conveniently have been rescinded, the very moment that *James C. Wadsworth* left the witness's stand? But neither an agreement to assign, nor an assignment itself, discharged him from the costs, which had already accrued. There must, in order to discharge him from this liability, have been an express agreement to that effect. Does he swear to any such agreement? He says *it was his understanding*, that *Amos* was to pay the costs. This language is, to say the least, of very equivocal import. It may mean, either that he understood such to be the terms of the agreement—or, it may mean, that such was the inference he drew from the agreement he had stated. He surely could not be convicted of perjury, although it should be proved, that not a word was said, on the subject of costs. If then his testimony left it doubtful whether he was thus discharged, it was the duty of the judge to reject him as a witness:—for it is certainly well settled, in *Connecticut*, that a liability for costs only, creates an interest, which goes to the competency of a witness. *Bill* v. *Porter*, 9 *Conn. Rep.* 23. *Beach* v. *Swift*, 2 *Conn. Rep.* 269. *Barnwell* v. *Mitchell*, 3 *Conn. Rep.* 101.

We are, therefore, of opinion, that the ruling of the judge on the circuit, was correct, and that the motion for a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.