1808.

Saturday,
December
24th.

Vansant *against* Boileau and another.

In Error.

An executor who is plaintiff in a feigned issue to try the validity of the will, is not a competent witness, being liable for costs.

A writ of error lies from this court to a judgment rendered by the common pleas upon a verdict on a feigned issue.

ERROR to the common pleas of *Bucks*.

The case below was a feigned issue from the register's court, to try the validity of a paper purporting to be the last will of *Nicholas Vansant;* and the defendants in error, who were the executors named in that paper, were the plaintiffs in the issue. Upon the trial, Mr. *Boileau* was offered as a witness to support the will, and was objected to for various reasons; but the material one was his liability for costs. The court overruled the objection, and sealed a bill of exceptions; and the jury found a verdict for the plaintiffs, sixpence damages, and sixpence costs, upon which judgment was entered as in common cases.

The question under the bill of exceptions was argued at *March* term, 1807, when *Ross* for the plaintiff in error contended, that even considering *Boileau* as an executor, he stood in the light of a *prochein amy*, who being liable for costs, is incompetent, according to *Hopkins* v. *Neal*, (*a*) though he might have no other interest; and that it was a general rule that a coplaintiff could not be examined on behalf of the plaintiffs, in consequence of this liability. 1 *P. Wms. 595.*

*Condy*, on the other side, argued, that as executor he was not liable for costs in the event of his failure; (*b*) but further, that upon a feigned issue, the costs did not follow the event of the trial, but were adjusted in the register's court as expenses attending the probate, and charged according to their discretion. Of course *Boileau* had no interest.

The court however decided that he was not a competent witness, on the ground of his being accountable for costs, and so maintained the exception.

*Condy* then moved to quash the writ of error, and had opened his argument, when it appeared that the writ had not been duly returned, and it went off for amendment. Upon the return of the writ, the motion was renewed, and argued at the present term.

(*a*) *Stra.* 1026.                    (*b*) *Vide Toller.* 439.

In support of the motion he contended that the authority
of the common pleas, over issues from the register's court, was
confined to taking and returning the verdict; and that the judg-
ment was a nullity. The 18th section of the act of 13th *April*
1791 provides " that if the register's court, upon a dispute
" upon facts arising before them, shall *send an issue* into the
" court of common pleas, which they shall do at the re-
" quest of either party, and a *verdict establishing the said facts*
" *be returned*, the said facts shall not be reexamined on ap-
" peal." The law knows nothing of a feigned issue formed in
the common pleas; it directs the real issue, between the parties
in the register's court, to be sent for the decision of a jury,
without declaration or plea, or any of the forms of a common
law suit; and the common pleas, instead of sealing a bill of ex-
ceptions, hearing a motion in arrest of judgment, or entering
a judgment, are expressly to certify the naked verdict to the
register's court, for their further proceeding. If a new trial is
proper, from the errors either of judge or jury, the application
must be to the register's court; and if they err in their defini-
tive decree, the 16th section gives an appeal to the court of
errors. A judgment by the common pleas is therefore no judg-
ment in point of law, as they have no authority to render it. If
they have, they may oust the party of his appeal; for instead of
the register's court passing a final decree upon the facts re-
turned by the verdict, all which may be carried by appeal to
the court of errors, this court will pass a final judgment only
upon matters of law appearing on the record. The whole pro-
ceeding is copied from, and is in strict analogy to, the sending
of issues from chancery. Upon verdicts on these issues, judg-
ments are not entered in the common law court, 2 *Harr. Chan.*
124.; and if a new trial is wanted, application must be to the
chancellor; *ibid.*, whether for the misdirection of the judge or
otherwise. *Lord Faulconberg* v. *Pierce* (*a*), *Cleeve* v. *Gas-
coigne* (*b*). And what shews clearly that the issue does not at
all follow the course of issues originating in the common law
court, is that the costs, which follow the event of the trial in
other cases, in these are in the discretion of chancery, 2 *Harr.
Chan.* 125. Now, in the fee bill, or in the act of 1791, there is
not a word about the costs of an issue from the register's court.

1808.
———
VANSANT
*v.*
BOILEAU.

(*a*) *Ambl.* 210.                    (*b*) *Ambl.* 323.

At common law there are no costs. The act being silent, the common pleas cannot give them. But it *must* give them *eo nomine*, and to the winning party, if it renders judgment upon this verdict; and therefore it cannot render judgment. The fact is that there are no costs at all; but the expenses of the issue are an incident to the probate of the will, and are charged according to the discretion of the register's court. Another difficulty: the executor is held not to be a witness. We wish to strike his name from the proceeding; it is a mere form, and any name will do as well. If the verdict were certified to the register's court, they who moulded the proceeding might rectify it; but if it be strictly a suit at law, we are without remedy either here or in the common pleas, except at the expense of paying costs.

*Ross* contrà. The common pleas has rendered a formal judgment, and therefore we are clear of technical difficulties. It is now simply a question, who is to correct the errors of that court upon the trial of a feigned issue. That the register's court can, is begging the question. It is a court of limited jurisdiction, and of prescribed powers, wholly unlike the court of chancery; which has the most extensive authority, and in various ways directly or indirectly controls the proceedings of other courts. The act does not authorize the register's court to grant a new trial. It provides no way of making known to it the misdirection of the judge, or the evidence; but it gives the limited power of sending forward an issue, which in every respect thereafter is left to the operation of common law rules. In point of fact there are real parties to this issue; in practice there is a declaration and a plea; matters of law and fact are discussed according to common law principles and the rules of evidence; and therefore there is nothing to except it from the control of this court, which has power, equal to the king's bench, to correct errors in the judgment, process or proceedings of the lower courts. *Act of* 1722. *Province Laws* 112. The act of 1791 gives a new jurisdiction to the common pleas in the matter of feigned issues, without limiting the mode of its exercise; it must therefore be according to the course of the common law, and controllable by writ of error or certiorari from

this court, *Groenvelt* v. *Burwell*. (*a*)  Accordingly so has been      1808.
the practice since the date of the law.  In numberless cases the  ―――――
issue has been removed by certiorari to this court, and tried     Vansant
here, precisely like other issues.  In one case the plaintiff was  *v.*
permitted to suffer a nonsuit; and in *Vanlear* v. *Vanlear* this   Boileau.
court, and not the register's, granted a new trial.  This mode
of proceeding is obviously the most convenient, and by far the
most conducive to justice; and it in no wise defeats the law,
because the verdict can be as well returned after a new trial
and judgment, as before.  Costs it is said are not of course; but
the contrary has been the uniform sentiment, and it was clearly
implied by the judgment of this court upon the bill of excep‐
tions.  But if the objection were good, it proves nothing, be‐
cause as the costs of the verdict are settled, so may be those of
the judgment and writ of error.

*Reply.*  The practice under the law can be of no avail against
its express directions; especially a recent practice, as any one
under this law must be.  How is the bill of exceptions obtained
in this case?  The statute gives it where one is *impleaded* before
the justices to whom the exception is alleged.  If these parties
are impleaded any where, it is in the register's court.  As to
allowing a nonsuit, that decision has been often overruled, and
it shews the difference between this and other issues; to allow it,
would be to defeat the register's court, and so does the writ of
error.  Our great difficulty is unnoticed. 'How are we to get
*Boileau's* name from the issue?  [C. J. T<span>ILGHMAN</span>.  You may ·
apply to the register to new model the issue.]  That we could
have done had the verdict gone back; but the register's court
cannot now get hold of it.

T<span>ILGHMAN</span> C. J.  This case comes before us on a motion to
quash the writ of error by virtue of which the record was re‐
moved from the court of common pleas of *Bucks* county.  An
issue had been directed to that court, by the register's court of
*Bucks* county, to try the validity of a writing set up as the last
will of *Nicholas Vansant* deceased.  The court of common pleas,
according to the usual course of proceeding in such cases,

―――――――――――
(*a*) 1 *Salk.* 263

1808.

VANSANT
v.
BOILEAU.

caused an action to be entered, a declaration to be filed, and an issue joined. A verdict was found for the plaintiffs, in which damages and costs were assessed, and judgment was entered. In the course of the trial, a bill of exceptions was tendered by the defendant who is plaintiff in error in this court; which was sealed by the judges and sent up with the record. The point contained in the bill of exceptions was argued some time ago; and this court delivered their opinion in favour of the plaintiff in error. The counsel for the defendant in error then moved to quash the writ; and he has urged many ingenious reasons in support of his motion. The scope of his argument is this: that by the act of assembly of 13th *April* 1791, the register's court are authorized to send an issue to the court of common pleas for the trial of facts disputed before them, and the verdict establishing such facts is directed to be returned to the register's court; that if improper evidence was admitted at the trial, this should have been represented, by the party injured, to the register's court, who might have ordered a new trial, and in case they had refused so to do, an appeal might have been made from their decision; that the court of common pleas ought not to have entered judgment on the verdict found before them, nor had they any occasion for a feigned issue in order to try the facts sent from the register's court.

It is unnecessary for me to give an opinion whether or not the facts might have been tried in the common pleas, without having recourse to the expedient of a feigned issue. It is certain that such and no other has been the course of proceeding, from the passage of the act of assembly before mentioned to the present moment. The action, placed on the record of the common pleas, has been treated like all other actions. It has been frequently removed to this court by *certiorari* and tried by jury here. In the case of *Vanlear* v. *Vanlear* in *Chester* county, a new trial was ordered by this court; and it was once decided that the plaintiff might enter a *non pros.;* though that decision seems now generally agreed to have been made without sufficient consideration, because the entry of a *non pros.* would defeat the act of assembly which directs the issue to be tried, and the verdict to be returned to the register's court. I can see nothing in the act of assembly which looks like an intent to place the register's court on the footing of the chancellor in *England,* who exercises the right of ordering a second trial,

if he is discontented with the first. Now unless that court can review the proceedings of the court of common pleas, it would be a great defect in the administration of justice, if errors could not be corrected in this court. If indeed the court of common pleas had given no final judgment in the case, there would have been a technical difficulty hard to be got over: a writ of error does not lie, except on a final judgment. But the judgment entered by the common pleas has removed all objections of that kind. It seems to me, therefore, that whether we consider this matter upon grounds of general convenience, without regard to former decisions, or take it up on the opinions which have been entertained both by the courts of common pleas and by this court, ever since the making of the law on which the case arises, the writ of error was properly issued. I am therefore of opinion that it should not be quashed.

YEATES J. was holding a court of nisi prius during the argument, and gave no opinion.

SMITH J. Ingenious as were the arguments of the counsel who moved to quash the writ of error, I have not been able to entertain a doubt upon the point.

The mode here pursued, of carrying the law on the subject into execution, has been adopted from the passing of that law. Titles to lands depend upon the legality of that mode. Yet if we found that the mode hitherto adopted was not warranted by the law, we ought to correct it. But, as I think that this manner of proceeding is warranted by the law and is calculated to carry it into complete execution, I cannot consent to quash the writ of error.

As to the point contained in the bill of exceptions, against the admissibility of *N. Boileau* as a witness, if it be open to consideration, I think it deserves another discussion. Are we precluded from discussing it? Let it not be said that judgment is already given upon it. The record was never before this court until this term; the judgment therefore alleged to have been given is a mere nullity. It seems to me not to be yet too late for the court of common pleas (which always under this act puts the issue directed by the register's court into form) so

1808.

VANSANT
v.
BOILEAU.

to modify that issue, as that justice shall not be entangled in a net of form, if this court shall be warranted in awarding a *venire facias de novo.*

BRACKENRIDGE J. concurred with the chief justice.

> Motion refused,
> Judgment reversed, and
> *Venire de novo* awarded.