# Loomis *versus* Kellogg.

Where a witness to a will who has signed the name of the testator to the will at his request was appointed executor in the will, his signature as a witness proved by two witnesses, is equivalent to proof of execution by one witness; and where the executor was afterwards offered as a witness but rejected on objection by the adverse party, the will ought not to be rejected because his attestation had not been corroborated by his oath. By being set aside, the executor was as a witness dead or out of reach of process.

ERROR to the Common Pleas of *Susquehanna county*.

The case came before the Court on an issue directed by the Register's Court to try the validity of a certain written paper purporting to be the last will and testament of Jasper Loomis, deceased. In the issue Sarah Loomis and Samuel A. Loomis were plaintiffs, and Thomas F. Kellogg and Alma Kellogg his wife, defendants. In the will of Jasper Loomis, his wife Sarah, and Samuel Loomis, the plaintiffs, were appointed executors. The will was dated the 16th day of September, 1848. It purported to be signed, &c., by Jasper Loomis in the presence of the witnesses, S. A. Loomis and Thomas J. Wrisley, who, it was averred, signed as witnesses in the presence of the testator.

On the trial, Thomas J. Wrisley testified, *inter alia:* I am subscribing witness to the will. It was executed by the testator in my presence. Samuel A. Loomis was the other subscribing witness. He requested Samuel A. Loomis to write his name, and he did so. He said he was not able to write his name himself. I

[Loomis *v.* Kellogg.]

have seen Samuel A. Loomis write. This is his signature. His name as a witness was written to it in my presence.

Cross-examination.—No one but myself, Samuel A. Loomis, and the widow, in the room when the will was made. I am sure no one else was present. He survived the execution of the will about a week. The will was executed on Monday morning between one and two o'clock. I and Samuel A. Loomis had been sitting up that night. The widow had retired before the will was executed. She was up and down. Can't tell whether Loomis or the widow brought the will in. I guess he did not take the will in his hands. He said he wanted the will signed, and witnessed when it was signed. The will was produced there drawn up as it is. The will looks like Otis Newton's handwriting. I saw Samuel A. Loomis write the name of the testator as well as his own. Can't tell what was done with it. Samuel A. Loomis had it when I last saw it. The words " per S. A. Loomis per request of the testator," I can't say whether written there at the time or not: can't say whose handwriting it is. He is brother to the widow. I stayed till about daylight. Jasper was raised up in the bed. He could not turn himself. He had dyspepsia. I got there from ten to eleven o'clock, A. M., Sunday. I was well acquainted with Jasper Loomis. I first saw him after dark Sunday evening. I did not shake hands with him. I only stepped to the door. The will was signed on a table or stand very near the bed. The will was not read to Jasper Loomis then, nor did he read it himself—not sealed up that I know of at the time. I have been acquainted with the handwriting of Otis sixteen or eighteen years. I can't tell whether that is the same handwriting with the body of the will. Samuel A. Loomis came in the afternoon towards night. I saw Samuel A. Loomis write his name. I saw him write the name of Jasper Loomis. He was better towards morning. The reason I did not go in to see him was because they did not like to have people go in.

Re-examination.—I think the widow was in the room before and when the will was executed. She had been to rest before the will was executed. I was in and watched in the night. S. A. Loomis was out in the other room. Jasper seemed to rouse up past midnight, and wanted to know if the will was executed. I called S. A. Loomis into the room. He asked him what he wanted. He said he wanted to know if that had been attended to. Samuel asked what. He said the " will." Samuel said " no," and asked him if he wanted it done. He said yes. He asked if he could sign it himself. He said " no," and requested Samuel to write his name to it. Samuel or the widow got it, and it was executed. Samuel asked him if he knew the contents. He said he did. I should think he said it had been read to him: did not say who read it or who drew it. I don't recollect who brought it. I don't recollect as he wrote anything but the two names.

F

[*Loomis v.* Kellogg.]

Otis Newton sworn.—I have seen S. A. Loomis write. That signature is his. The name "Jasper Loomis" is in the handwriting of Samuel A. Loomis.

The will was offered to be read, but it was objected to on part of defendants, on the ground that the same was not sufficiently proved, and that the requisite proof of the situation of the testator at the time of making the will had not been given. The court sustained the objection, and the counsel of plaintiff excepted.

The plaintiff's counsel then called Samuel A. Loomis (one of the plaintiffs) as a witness, to prove the execution of the will; to whom the counsel for the defendants objected on the ground of incompetency. The court sustained the objection and rejected the witness, to which the counsel for the plaintiffs excepted.

It was assigned for error :

1. That the court erred in not receiving the will in evidence, when by the laws of the land it should have been.

2. The court erred in not receiving the testimony of Samuel A. Loomis to prove the execution of the will, he being a competent witness.

For the plaintiff in error, was cited, 5 *Barr* 21, Asay *v.* Hoover; *Id.* 441, Barr *v.* Graybill; Hays *v.* Harden, 6 *Barr* 412; 9 *Id.* 151.

The executor was competent, 9 *Barr* 88–9; 1 *P. Wms.* 290; 2 *Id.* 182; 51 *Law Lib.* 105: *Am. Law Jour.* 62, *August No.* 1850, Snyder *v.* Bull.

*H. Wright* and *Newton* for defendants.—The witness stated no fact showing the inability of Jasper Loomis to sign his name, nor does he give any opinion upon the subject, but the mere declaration of the sick man himself. Instead of showing that the inability to sign continued, even if it existed, the very reverse is proved, for toward morning he was better. What his condition was during the whole week after, they do not pretend to show. Then having proved the handwriting of S. A. Loomis, the will was offered, and was rejected, and rightly, as appears by 5 *Whart.* 386, Stricker *v.* Groves; 8 *W. & Ser.* 21, Cavett's Appeal; 5 *Barr* 21, Asay *v.* Hoover; *Ibid.* 441, Grabill *v.* Barr; 10 *W.* 153, Dunlop *v.* Dunlop.

The *onus* was upon the plaintiffs to prove the extremity that disabled; that such inability continued until death; and the express directions to sign for him. The only proof of inability was the testator's declaration—no fact or opinion given by those who saw him, showing such extremity as is contemplated by the statute. What was his condition after the will was signed? Toward morning he was better, and during the week after, when it was

upon them to prove the continuing inability, they gave not a word of evidence.

Samuel·A. Loomis, a party to the record, was offered. Was he interested in sustaining an issue to which he voluntarily became a party? Was he liable for the costs, and interested in establishing a will in which he was named as executor and had not renounced? The costs in an issue like this are to be borne by the parties to it: 7 *Watts* 170, Koppenhaffer *v.* Isaacs. The parties to such a contest must pay the expenses out of their own pockets: 2 *Watts* 332, Dietrich's Appeal. A party to the record will not be permitted to evade the liability incident to such position. In 1 *Harris* 109, Search's Appeal, Wynkoop was executor, one of the legatees, and subscribing witness; after renunciation and assignment he was held to be a witness to prove the will. The same facts existed, and the same ruling is found in 1 *Rawle* 433, McIlroy *v.* McIlroy. But in these cases the witness was not a party to the record, like the case at bar.

16 *Ser. & R.* 315, Kerns *v.* Soxman; 1 *Harris* 569, Boyer's Appeal; and 3 *W. & Ser.* 442, Mumper's Appeal, further establish the incompetency of Loomis as a witness. In 1 *Binn.* 444, Vansant *v.* Boileau, this very point is directly settled—"An executor who is plaintiff in a feigned issue to try the validity of the will, is not a competent witness, being liable for costs."

The opinion of the Court was delivered by,

GIBSON, C. J.—The principal question has regard to the *onus.* The evidence is clear that the testator was unable to write his name when the will was executed; that he rallied a little towards morning, and that he lived about a week; but there was no evidence that he was, in any part of the period, able to sign with his own hand. The will was undoubtedly executed in his last sickness; and, in the absence of counteracting proof, the presumption is that his inability continued till his death. So far, then, as concerned want of bodily power, there was no ground of exception to the execution.

According to the decision in Vansant *v.* Boileau, 1 *Bin.* 444, Samuel A. Loomis, the executor, an attesting witness, and a party to the issue, was liable for costs and therefore incompetent. According to Snyder *v.* Bull, *ante,* p. 54, he was not interested when the will was executed; and had his testimony been indispensable to the establishment of it, we might be at a loss for a reason to deprive the legatees of the benefit of it, merely because he had voluntarily acquired a subsequent interest in the event. But it was not necessary. The presumption is that he was ready to sustain his attestation with his oath; and proof of his signature by two persons, was equivalent to proof of execution by a full witness. As, however, he might have contradicted it, the plaintiffs

[Loomis *v.* Kellogg.]

were bound to offer him, not only to sustain the presumption, but to afford the defendants the benefit of a cross-examination. But the latter had no right to waive it by having him rejected in the first place, and to have the will rejected in the second, because his attestation had not been corroborated by his oath. By having him set aside, they put him in the predicament of a witness dead or out of reach of process; and in such a case, according to Hays *v.* Harden, the will might be read, so far as he was concerned, on proof of his signature; and that course ought to have been pursued here.

Judgment reversed and *venire de novo* awarded.