# Brown *versus* Parkinson.

1. In an issue between two judgment-creditors to try the validity of a judgment in favor of one of them, a third judgment-creditor could not avail himself of the verdict; he is therefore without interest, and a competent witness.

2. In an issue to try whether a judgment was given for more than was due in fraud of creditors, after evidence tending to show the affirmative, declarations of the judgment-debtor are admissible.

3. A writ of error will lie to a judgment in a feigned issue to try whether a judgment was confessed to hinder, &c., creditors.

November 15th 1867. Before Thompson, Strong, Read and Agnew, JJ. Woodward, C. J., absent.

Error to the District Court of *Allegheny county :* No. 98, to October and November Term 1867.

This was a feigned issue directed by the court below on the 11th day of August 1866, to try the validity of certain judgments and executions thereon against Jenkins, Neish & Co., and Jenkins, Hill & Co.

On the day of awarding the issue William Parkinson presented his petition setting forth that he was a judgment-creditor of George Jenkins, James Jenkins, Adam Jenkins, John Neish, Abraham Neish and Andrew Neish, by virtue of two judgments entered April 4th 1865, one for $4640 and the other for $2860 ; that on the same day William H. Brown entered two judgments against the same defendants, as partners under the firm of Jenkins, Neish & Co., one for $8564.30 and the other for $12,084.20 and another judgment against the same defendants and Thomas Hill as the firm of Jenkins, Hill & Co. ; that Brown issued executions on these judgments and sold the real and personal estate of the defendants, the sale of which was not yet confirmed, the writs being still in the sheriff's hands ; that the judgments were taken for a much larger amount than was due, for the purpose of hindering, delaying and defrauding the petitioner and other creditors of the defendant, and he prayed for a feigned issue to try the validity of the three judgments.

The court awarded the issue in the form of a wager, in which Parkinson was to be the plaintiff and Brown the defendant.

On the trial before Williams, A. J., the plaintiff offered the

[Brown v. Parkinson.]

record of a judgment, William Parkinson against James and Adam Jenkins, and John, Abraham and Andrew Neish, entered April 4th 1865, on a note filed, dated June 6th 1864, for $4640, payable in instalments, the first in one year and the last in five years. The defendant objected to the offer because the note was not duly stamped and the judgment was entered without a stamp. The objection was overruled and a bill of exceptions sealed.

The plaintiff then offered the record of another judgment, Same against Same, entered April 4th 1865, on a single bill filed, dated June 6th 1864, for $2860, stamped, payable in instalments, the first June 6th 1870 and the last June 6th 1872. The same objection as to the former offer was made, but was overruled and a bill of exceptions sealed.

The plaintiff further gave in evidence a deed, dated March 29th 1865, from himself to Jenkins et al. for the consideration of $8500 for 29 acres of land, and gave evidence that the notes on which his judgments were entered were given for the purchase-money of the land, but were ante-dated to cover some arrears of rent for the land sold.

He also offered in evidence a lease for ten years from himself to Thomas Hill and Adam Jenkins, for coal privileges and land necessary for buildings. The offer was objected to by the defendant, admitted by the court and a bill of exceptions sealed.

He then gave in evidence the judgments of Brown mentioned in his petition, all entered April 4th 1865, viz.: one for $8564.30 against Jenkins, Neish & Co., on a note with warrant of attorney for $8150, dated March 30th 1865, payable in one day, interest $6.80, commission $407.50, and waiver of inquisition; fi. fa. on the judgment issued May 12th 1866; another, against same, for $12,084.20, on a draft of Jenkins, Hill & Co. per William Jenkins in favor of Brown for $11,500 at sight, accepted by Jenkins, Neish & Co., with warrant of attorney of same date from Jenkins, Neish & Co. by James Jenkins to Hill Burgwin, interest $9.20, commissions $575, without stay, waiving inquisition, &c., fi. fa. issued May 12th 1866; the third, against Jenkins, Hill & Co., same as preceding and for same debt, judgment entered on like warrant of attorney, and fi. fa. issued the same day.

The plaintiff proved by the sheriff that under these executions he sold the personal property and lease of defendants for $4977.50 and the real estate for $7000 to Brown.

The plaintiff gave much evidence to maintain the issue on his part, and, amongst other witnesses, called E. Downer, a member of a firm who were judgment-creditors of Jenkins, Neish & Co.; he was objected to as interested, but was admitted and a bill of exceptions sealed.

The plaintiff also offered to prove the declarations of George Jenkins and James Jenkins, two of the defendants, in the judg-

6 P. F. Smith—22

[Brown *v.* Parkinson.]

ments in favor of Brown in reference to the executions against them. The defendant objected to the evidence, but it was admitted and a bill of exceptions sealed.

The court, after answering points presented by the defendant and calling the attention of the jury to the main facts in the case, concluded the charge, saying:—

" Like all questions of fraud, this is a case peculiarly for the jury, and one upon which the court does not intend to express or intimate an opinion. The whole responsibility of determining what are the facts in regard to the judgments and executions in question—for what purpose and with what intent they were given and issued, rests not upon the court, but upon the jury."

There was a verdict for the plaintiff, and the defendant moved for a new trial, which was refused ; he then took a writ of error. He assigned for error the admission of the several offers of evidence contained in the bills of exceptions ; also that the court erred *in overruling the motion in arrest of judgment* and that " the court erred through the whole case in treating the matter as an action at common law, to be determined *alone by the jury*, and in the determination of which it was not necessary for the judgment and conscience of the court to be satisfied that the proceedings were intended to hinder, delay or defraud creditors, when in law the finding should only be to aid the court in coming to a just determination."

*H. Burgwin* and *R. Woods*, for plaintiff in error.—It requires fuller and clearer evidence for a judge sitting as a chancellor to decree as void or postpone on account of fraud, a judgment, than it does to make it his duty to grant a new trial on a verdict at law. The trial and verdict were but to enlighten the conscience of the court; taking the verdict and all the evidence they were wholly insufficient to have satisfied any chancellor, and on the verdict and evidence taken together the judgment is erroneous: Ringwalt *v.* Ahl, 12 Casey 336 ; Baker *v.* Williamson, 2 Barr 116. They cited also Cudler *v.* Dutton, 1 Phila. R. 226.

*C. Hasbrouck*, for defendant in error.—The principle relied on assumes that the conscience of the court was not satisfied that the proceedings were intended to defraud creditors.

The judgment of the court upon the motion for a new trial and upon the verdict is a sufficient answer to that.

The opinion of the court was delivered, January 7th 1868, by Read, J.—On the 29th March 1865 William Parkinson, by deed dated on that day, conveyed a tract of land containing 29 acres, situate in Elizabeth township, Allegheny county, to George Jenkins and five others in fee simple. The consideration in the

deed was $8500. For part of this purchase-money he took two judgment-notes—one for $4640, and the other for $2860. These notes were payable in instalments, the earliest on the 6th June 1865, the last on the 6th June 1872. These grantees had, on the 19th May 1862, taken a lease of a coal privilege in this land for ten years, and were working it at the period of the conveyance to them. These parties had from 1862 to the time of the conveyance large transactions in coal with William H. Brown.

The next day after the conveyance, which gave the grantees the fee simple in the land on which their coal works were erected, they gave William H. Brown a note for $8150, and a warrant of attorney dated the day after (31st March 1865), on which judgment was entered on 4th April 1865 for amount of note, interest $6.80, and commission $407.50, making the judgment $8564.30, being $64.30 more than the purchase-money of the land. The warrant of attorney contained a waiver of inquisition, &c.

On the same 30th March 1865, Jenkins, Hill & Co., per William Jenkins, gave their draft in favor of William H. Brown for $11,500, payable at sight, and accepted by Jenkins, Neish & Co.; and on the same day Jenkins, Neish & Co. gave a warrant of attorney to Mr. Burgwin (to whom the other warrant was given), on which judgment was entered on 4th April for $12,084.20, including interest $9.29 and commission $575, without stay— waiver of inquisition, &c.

A similar judgment on the same day, and the same amount in favor of William H. Brown, was entered against Jenkins, Hill & Co. on the said draft on like warrant of attorney.

On the 1st April 1865, George Jenkins and others gave William H. Brown a mortgage on the land conveyed by William Parkinson, and on leasehold which was acknowledged on the 29th of the same month, and recorded on May 20th 1865.

On the day of the date of the mortgage, Jenkins, Neish & Co. had given William H. Brown their judgment-bond in the penal sum of $30,000, conditioned for the payment of $15,000, and the mortgage was given to secure the said sum and the note for $8150 and the draft for $11,500, amounting to $34,650, the note and draft being included in the judgments above mentioned.

On the two first judgments executions were issued on the 12th May 1866, and the sheriff levied on the personal property of the defendants in the executions at the coal works in Elizabeth township, advertised and sold the same on June 5th 1866 for $4977.50. The coal-cars, flats and leasehold of landing and improvements, with six years to run from May 19th 1866, were purchased by William H. Brown.

After this sale the sheriff levied on the 29 acres of land (coal works) advertised, and sold it on July 27th 1866 to William H. Brown for $7000.

On the 4th April 1865, William Parkinson entered judgments

on the two judgment-notes given for purchase-money of the land bound by Brown's judgments entered on the same day.   Parkinson having an execution on his larger judgment in the sheriff's hands, on the 11th August 1866 applied by petition to the District Court, stating the facts relating to his own judgments and those of Brown's three judgments, and that these judgments were taken for a much larger amount than was actually due, and for the purpose of hindering, delaying and defrauding the petitioner, and other just creditors of said defendants, &c., and on the same day the court awarded a feigned issue to try the validity of the said three several judgments, and proceedings stayed in the meantime, and directed the issue to be in the form of a wager, wherein William Parkinson should be plaintiff and William H. Brown defendant.   A narr. was filed containing several counts, and defendants by plea traversed the allegations.   On the 20th October the jury were sworn, and on the 2d November gave a verdict for the plaintiff.   On the same day defendant moved for a new trial, which was argued on the 22d November, and on the 30th March 1867 the new trial was refused, and on the 18th April judgment was entered on the verdict.

From the evidence in the appendix connected with the origin of the three judgments, there was ample testimony to sustain the verdict of the jury, and the charge of the learned judge, which is spread upon the record, is so clear and impartial as to leave no doubt that the decision was correct both in law and fact, and eminently just.   The record shows the court to have been deliberate in its judgment, and that it should not be disturbed unless some error has been committed on the trial.

There is no error assigned to the charge of the judge.   The 2d and 3d errors assume what is not shown, that the notes and judgments were not duly stamped.   We think the 4th is not supported.   The lease was intimately connected with the whole history of the case and the origin of Brown's judgments and his proceedings under them.   Eliphalet Downer had no interest in the issue ; no other creditor than Parkinson could avail himself of the verdict.   The declarations of persons actually engaged in a proved conspiracy are always evidence.

There is nothing on the record showing the nature or character of the motion in arrest of judgment, and this disposes really of all the exceptions.

There is, however, a complaint against the judge, not in any way supported by the record, that he erred in treating the matter as an action at common law to be determined *alone by the jury.* This complaint arises from a vague notion that the court should intimate in some strong way its opinion on the facts to the jury. Which, if they had done, and it would undoubtedly have been against the defendant, then it would have been said, and justly,

that he threw his opinion into the jury-box when the object of the issue is to have the unbiassed verdict of the jury on the facts presented for their decision.

In Gratz v. The Lancaster Bank, 17 S. & R. 278, Judge Huston assigns the reason for resorting to a feigned issue in cases of distribution of money arising from sheriffs' sales: "If there was no issue, real or feigned, it was settled and well understood everywhere, that the opinion of the Court of Common Pleas was final. And in every instance where either party wished a revision of the opinion in a superior court, a case was stated with express right to take a writ of error, or an issue, real or feigned, was resorted to."

In Vansant v. Boileau, 1 Binn. 444, upon a feigned issue directed by the Register's Court to the Common Pleas, it was held, a writ of error lies from the Supreme Court to a judgment rendered by the Common Pleas upon a verdict in it.

In Kellogg v. Krauser, 14 S. & R. 137, which was a writ of error to a judgment in a feigned issue to try the validity of a judgment, C. J. Tilghman said (p. 143): "What we have to do is to decide whether there was error in anything that occurred on the trial of the feigned issue. That is in form a complete action, unconnected with the motion to open the judgment, with which we have no concern. But I hope it is not now a matter of doubt whether a Court of Common Pleas can entertain a motion to strike out or open a judgment entered on a warrant of attorney, or to order a feigned issue for the purpose of ascertaining necessary facts. If it has not this power, miserable indeed is our condition. It is the first time I have heard it questioned. It is, and has been for the last half century at least, the undisputed and constant practice."

"Feigned issues should be encouraged, because, without them, the court must draw the trial of all facts to itself. Suppose a case of complicated fraud disclosed by affidavit. It may depend altogether on matter of fact. And is it not much more agreeable to the spirit of our laws and constitution, that this should be referred to a jury, than tried by the court? And even if fact were intermixed with law, is there not a great advantage in a mode of trial by which the opinion of the court on points of law may be reviewed by a superior tribunal? If the court decides the whole on motion, I know of no redress. But should there be a mistake in the admission or rejection of evidence, or in charging a jury on a feigned issue, a writ of error lies."

The same doctrine is enunciated by Judge Duncan in Neff v. Barr, 14 S. & R. 166.

In cases of the distribution of proceeds of sheriffs' sales, they are governed by the Acts of the 16th June 1836 and 20th April 1846, Brightly's Purdon 446, 447.

[Brown v. Parkinson.]

In Baker v. Williamson, 2 Barr 116, which was a case on the equity side of the Common Pleas; and in Commonwealth v. Judges of Common Pleas, 4 Id. 301, which was a case in the Orphans' Court; and in Ingraham v. Caricabura, 5 Id. 177, which was a case on the equity side of the Common Pleas, it was held that feigned issues from them (being Courts of Chancery and acting as such), to the Common Pleas were not subjects of a writ of error, but only came up with the other parts of the case by appeal.

By the Acts of the 10th April 1848 and 10th April 1849, a writ of error lies in feigned issues from the Orphans' Court, and in proceedings under the Sheriff's Interpleader Act: Brightly's Purdon 409.

C. J. Black, in Hallowell's Appeal, 8 Harris 215, discussed the effect of the Act of 10th April 1848, and held that it gave a new remedy—a writ of error—but left the old one by appeal untouched. Ringwalt v. Ahl, 12 Casey 336, was a feigned issue directed by the Common Pleas to try the validity of two judgments confessed by John Burnett in favor of Diller Ringwalt. It was carried to the Supreme Court by writ of error. My brother Strong stated the power of the court to direct what should be tried, the form of the issues and who should be parties, and whether the parties, and of course all interested persons, should be examined. These suggestions were carried out to the fullest extent in framing the issues in Cochran v. Eldridge, 13 Wright 365, although they do not appear in the printed report. The Chief Justice there said, " Creditors have often been admitted to show that a judgment was fraudulent as between the original parties; and it would be strange if the defendants might not show the fraud." Ferree v. Thompson, 2 P. F. Smith 353, was a writ of error to a judgment in a feigned issue to try whether a judgment was bonâ fide and entitled according to date to a priority over subsequent judgment-creditors.

Springer, Admr., v. Springer, 7 Wright 518, holds that where there is a decree of subrogation to a judgment a writ of error is not proper. Subrogation is an equitable remedy, and can properly be reviewed only by appeal. So in Horton v. Miller, 8 Wright 256, it was held that on application to the equitable powers of the court to set off one judgment against another, the remedy of the party aggrieved is by appeal, and not by writ of error.

It is clear, then, that in the present case no error occurred on the trial of the feigned issue nor in the judgment.

The judgment is affirmed.

STRONG, J., dissented.