STATE OF CONNECTICUT *v.* GEORGE HICKS

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and BARBER, Js.

Argued June 5—decision released September 16, 1975

*Martin B. Burke,* special public defender, for the appellant (defendant).

*Donald B. Caldwell,* state's attorney, for the appellee (state).

MacDonald, J. On a trial to a jury, the defendant was found guilty of one count of attempted larceny in the first degree, in violation of §§ 53a-119 (2), 53a-122 (a) (2) and 53a-49 of the General Statutes, one count of larceny in the first degree, in violation of §§ 53a-119 (2) and 53a-122 (a) (2) and two counts of forgery in the second degree, in violation of § 53a-139 (a) (1). On his appeal to this court, the defendant raises four issues, having specifically abandoned in oral argument two of his assignments of error and having combined several others in his brief. He has first assigned error to the denial of his motion to set aside the verdict as unsupported by the evidence. Under the appellate rules applicable to appeals in jury cases at the time this appeal was taken, such a claim is tested by the evidence printed in the

appendices to the briefs. *State* v. *Panella,* 168 Conn. 532, 533, 362 A.2d 953; *State* v. *Lally,* 167 Conn. 601, 603, 356 A.2d 897. From that evidence, the jury could reasonably have found the following facts: On the morning of April 5, 1972, the defendant drove with Frank T. Cady and Robert A. DeMatteo from Haverhill, Massachusetts, to Willimantic, where Cady entered the main office of the Willimantic Trust Company, opened a checking account, and deposited $75. The three men then went to a branch of the bank where Cady cashed a check drawn in his favor against Middlesex Mutual Insurance Company in the amount of $3850. This check was one of a series of blank drafts on the insurance company which one of its adjusters had recently discovered to be missing from his possession. When cashed, the check had Cady's name as payee, the amount of $3850 added by typewriter, and a forged signature. Of the cash thus obtained, Cady deposited $850 in his new account in the bank and gave $3000 to DeMatteo.

The three men then drove to another branch of the same bank located in Storrs, and as they drove, the defendant sat in the back seat of the car operating a typewriter. They all entered the Storrs branch where the defendant changed some bills while Cady tried, without success, to cash another check. They next drove to Killingly, and, during the drive, Cady again heard the defendant, who was in the back seat, operating a typewriter. In Killingly, Cady left the defendant and DeMatteo at a diner, then drove to the drive-in window of the bank and again attempted to cash a check drawn in his favor against the same insurance company, again for $3850, with his name as payee and the amount added to the printed draft by typewriter.

Cady was arrested at the bank. When DeMatteo and the defendant entered the diner, from which they could see the bank, DeMatteo was carrying a black plastic bag. They ordered a sandwich and left the diner suddenly, paying for the sandwich but not taking it with them, and set off on foot towards Rhode Island. That same afternoon a black plastic bag was found in the men's room of the diner. It contained many different blank checks, including two of those found missing by the adjuster of the Middlesex Mutual Insurance Company, and it also contained several different types of identification cards made out in various names. The next day the defendant, DeMatteo, John T. Riviezzo and Dickie Lucien drove from Haverhill to the diner in Killingly. DeMatteo sent Lucien and Riviezzo into the diner to look for a package in the men's room. Not finding the package, the four then drove back to Massachusetts. As they drove, DeMatteo told Riviezzo that the day before he and the defendant "had had some exercise" along the same road, walking and hitchhiking and running from the police. The defendant agreed with these remarks, and then told DeMatteo that he was worried about the bag because it had handwriting samples and fingerprints in it.

The defendant contends that, since he was not actually with Cady in either the Willimantic or Killingly bank, and since Cady testified that he did not know who signed the checks or typed his name on them, there was no evidence of any criminal behavior on his part to support the guilty verdict. It is true that evidence of mere presence as an inactive companion, or passive acquiescence, or the doing of innocent acts which, in fact, aid in the commission of a crime, is insufficient to support a con-

viction under the accessory statute, § 53a-8. *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650. Nevertheless, it is not necessary to prove that an accused was actually present at or actively participated in the actual commission of a crime. It is sufficient to prove that he intentionally assisted in its commission. *State* v. *Pundy,* 147 Conn. 7, 156 A.2d 193. Under § 53a-8, "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." "One may be an accessory even though not present actively aiding, abetting or being guilty of a positive act in the commission of an offense." *State* v. *Pundy,* supra, 11.

On a motion to set aside the verdict, the evidence must be viewed in the light most favorable to sustaining the jury's verdict, but it must be set aside if the evidence was insufficient to justify a finding of guilty beyond a reasonable doubt. *State* v. *Raffone,* 161 Conn. 117, 121, 285 A.2d 323. However, the trier of fact is entitled to draw all fair and reasonable inferences from the facts and circumstances which it finds established by the evidence. *State* v. *Taylor,* 153 Conn. 72, 78, 214 A.2d 362, cert. denied, 384 U.S. 921, 86 S. Ct. 1372, 16 L. Ed. 2d 442. From the foregoing summary of the evidence, it is clear that the jury were justified in their inference that the defendant was a party to the attempted larceny, the larceny, and the forgeries. Explanations of the defendant's actions consistent with noncriminal behavior, though possible, overstep the bounds of credulity. The state need not offer proof of guilt "beyond a possible doubt."

*State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582. The motion to set aside the verdict was properly denied.

The defendant's next claim of error concerns that portion of the court's charge pertaining to intent which states that "until some credible evidence comes into the case tending to prove that, because in the light of the circumstances as he honestly and in good faith believed them to be, the act which he did would appear to be lawful or because the act was an accident, until such credible evidence appears in the case the State may rest upon the presumption that an accused intended to commit an act which he did commit."[1] The defendant contends that credible evidence to rebut the presumed intent could have come into the case only through his own testimony and that the jury, therefore, could conclude from the charge that the defendant had a duty to testify and therefrom draw an adverse inference from his failure to do so contrary to the rule of *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. The *Griffin* rule, first applied in this state in *State* v.

[1] The court's charge on intent was as follows: "Now, I touched upon the question of intent, I believe, a moment ago. With regard to this question of intent, intent may also be presumed. In the usual case the State does not have to offer evidence to prove that a man charged with crime actually had a guilty intent or guilty knowledge. This is because a man is presumed to have intended to do the act which he did do. Accordingly until some credible evidence comes into the case tending to prove that, because in the light of the circumstances as he honestly and in good faith believed them to be, the act which he did would appear to be lawful or because the act was an accident, until such credible evidence appears in the case the State may rest upon the presumption that an accused intended to commit an act which he did commit. Until such evidence appears in the case the jury must presume that the accused intended to commit such acts as the jury finds he did commit, and accordingly find that the requisite guilty intent was present if it is shown that the act done by the accused was unlawful."

*Annunziato,* 154 Conn. 41, 221 A.2d 57, forbids adverse comments by the prosecution or the court upon the failure of the accused to testify.

The charge as given, especially the phrase "as he honestly and in good faith believed them to be" could be construed as an oblique reference to the defendant's failure to testify if there was no other evidence from which such intent could be inferred. However, in order to find any merit in the defendant's argument, one must accept his basic assumption that the "credible evidence" mentioned by the court could come only from the testimony of the defendant himself. Both Riviezzo and Cady testified at length concerning the defendant's actions, words and general conduct during the two days in question. Consequently, the defendant's contention that the charge placed an impermissible burden upon the exercise of his right to remain silent is unavailing. See *United States* v. *Thompson,* 490 F.2d 1218, 1221–22 (8th Cir.); *United States* v. *Lipton,* 467 F.2d 1161, 1168 (2d Cir.). The charge merely referred to "some credible evidence com[ing] into the case." The charge did not suggest that the "credible evidence" must come from the defendant, nor is there any reason to think that the jury concluded that the charge so required. Further, to clear up any doubt on this point, the court specifically instructed the jury that the defendant had no obligation to testify.[2]

---

[2] The court charged as follows: "Now, the defendant in this case or in any other case is under no obligation to become a witness in his own behalf. Under our law an accused person may either testify or not as he sees fit. It is for the State to prove him guilty, and no burden rests upon the defendant to prove himself innocent. The defendant in this case has not testified. You are not to consider his failure to testify as any evidence of his guilt nor shall you draw from his failure to testify any inference as to his guilt."

The defendant's two remaining claims of error relate to rulings on the admissibility of evidence. The first of these is that the court erred in allowing Cady to testify that the defendant was with him in the Storrs bank arguing that Cady's attempt to cash a check in the bank constituted criminal activity which was not charged in the information, and that therefore it was irrelevant and prejudicial. It is, of course, the general rule that evidence of similar but unconnected crimes is inadmissible against the accused. *State* v. *Jenkins,* 158 Conn. 149, 152, 256 A.2d 223; *State* v. *Gilligan,* 92 Conn. 526, 103 A. 649; Holden & Daly, Connecticut Evidence § 69 (a) (4). There are exceptions to this general rule; *State* v. *Jenkins,* supra, 153; but these need not concern us, for although the activity of Cady and the defendant in the Storrs bank may well have been criminal, there was nothing in the evidence as presented to the jury so to indicate. So far as the jury were concerned, the presence of the defendant with Cady in the Storrs branch was free of any criminal taint. The evidence, therefore, could not have been prejudicial and was properly admitted.

The second evidentiary matter relates to the testimony of Riviezzo concerning conversations which he overheard between the defendant and DeMatteo in which the defendant agreed that they had run from the police the day before and remarked that he was worried about the plastic bag because it contained fingerprints and handwriting samples. It is well established that declarations of a party against his own interest are admissible in criminal as well as civil trials. *State* v. *Willis,* 71 Conn. 293, 306, 41 A. 820; Holden & Daly, op. cit. § 101. The defendant claims, however, that since

Riviezzo stated that he could not hear all of the conversations in the car, his testimony was improperly received. It is true that the entire conversation in which an admission was contained should be related in order to prevent statements from being taken out of context; *Ives* v. *Bartholomew,* 9 Conn. 309, 312; 7 Wigmore, Evidence (3d Ed.) § 2094; but the defendant has not shown that any pertinent portion of the conversation was omitted. As far as is revealed by the record the entire conversation with respect to the subject matter of the admission was related. The defendant also claims that Riviezzo improperly summarized the conversation and could only approximate its substance. This claim is without merit. When admissions are made in a conversation overheard by the witness, it is not necessary that the precise words of the declarant be recalled or repeated. The ability of the witness to recall details of the conversation reflect on the weight to be given his testimony, and not upon its admissibility. *Seymour* v. *Harvey,* 11 Conn. 275; Holden & Daly, op. cit. § 101 (c). The testimony of Riviezzo was properly admitted.

There is no error.

In this opinion the other judges concurred.