STATE OF CONNECTICUT *v.* MICHAEL R. HARRISON

COTTER, C. J., LOISELLE, BOGDANSKI, SPEZIALE and PETERS, Js.

Argued April 11—decision released August 28, 1979

*A. A. Washton* and *Peter W. Rotella,* for the appellant (defendant).

*C. Robert Satti,* state's attorney, with whom were *Stuart M. Schimelman,* assistant state's attorney, and, on the brief, *D. Michael Hurley,* assistant state's attorney, for the appellee (state).

Speziale, J. The decisive issue in this case concerns the trial court's instruction to the jury on the determination of the defendant's intent.

The defendant Michael R. Harrison was charged in an amended information in two counts with the crime of accessory to an attempted robbery in the first degree, in violation of General Statutes §§ 53a-8 and 53a-49 (a) (2), and Public Acts 1975, No. 75-411 (a) (2) (now General Statutes § 53a-134 (a) (2) ), and with the crime of accessory to larceny in the second degree, in violation of General Statutes §§ 53a-8 and 53a-123 (a) (1). The jury returned a verdict of guilty on the first count, and not guilty on the second count. The defendant's motion to set aside the verdict of guilty was denied, and he appealed from the judgment rendered.

The jury reasonably could have found the following facts: On March 1, 1976, at approximately 8:30 p.m., two men in a Ford Mustang automobile drove into a gas station owned and operated by FISCA and located on route 85 in the town of Waterford. Barry Bourque, the attendant on duty from 2 p.m. until 10 p.m. that day, approached the automobile. The driver of the car got out, pulling a mask over his face, and told Bourque to be quiet. Bourque called to two companions who had started to leave the station. At this moment, the car's passenger, who was also wearing a mask, stepped out of the automobile, pointed a gun at Bourque, and told him

that he would be "the first to die." The two men then told Bourque and his friends to walk toward the building. Bourque grabbed the gun and a bullet was discharged, which struck the gas station building. Both masked men then fled on foot toward route 85, leaving the car with its motor idling near the gasoline pumps.

After the two men had fled, Bourque called the Waterford police, who arrived and took descriptions of the two men from Bourque and from one of his two companions. The police then searched the area and found an individual named Thompson, who fit one of the descriptions. Bourque and his friend confirmed that Thompson's clothing resembled that worn by the driver of the automobile. Thereafter the suspect was taken to the Waterford police department.

Earlier in the evening of March 1, 1976, the Ford Mustang driven into the gas station by the two masked men had been taken from a commuter parking lot located on route 85 beneath the route 52 overpass. The automobile was identified by its owner the next day at the Waterford police department. There was testimony from a witness at the trial that the defendant had taken Thompson, the driver, and the passenger, later identified as Steven Carter, to the commuter parking lot. The defendant allegedly had revealed to the witness that he drove the two to the lot so that they could take a car, and that he then went to a designated meeting place to wait for them, but left when they did not arrive.

The defendant has assigned thirteen counts of error in the conduct of the trial proceedings, claim-

ing, inter alia, that the court erred in its instruction to the jury on the defendant's intent which is an element of the crime charged. Because our ruling on this issue is dispositive of the case, we do not address the other claims of error.

The trial court charged, in part, on the procedure to be used in analyzing the element of intent as follows: "Now, I touched on the question of intent a moment ago. With regard to this question, intent may also be presumed in the usual case. The State does not have to offer evidence to prove that a man charged with a crime actually had a guilty intent. This is because a person is presumed to have intended to do the act which he did do. Accordingly, until some credible evidence comes into the case tending to prove that because in the light of the circumstances as he honestly and in good faith believed them to be, the act which he did would appear to be lawful, or because the act was an accident, until such credible evidence appears in the case, the State may rest upon the presumption that the accused intended to commit an act which he did commit. Until such evidence appears in the case, the jury must presume that the accused intended to commit such acts as the jury finds he did commit, and accordingly find that the requisite guilty intent was present if it is shown that the accused, [sic] done by the accused, was unlawful."

The defendant excepted to that portion of the charge and to other sections given on the element of intent. The trial court subsequently reinstructed the jury on some portions of the intent charge, but did *not* revise the portion quoted, having indicated to defense counsel when he excepted that the section

would stand because "I took that directly out of a charge that has been approved by the Supreme Court."[1]

In reviewing instructions to the jury the court looks at the charge as a whole, and will not sever one portion and analyze it in isolation from the rest. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); see also *Cupp* v. *Naughten,* 414 U.S. 141, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). The issue then is whether the charge taken as a whole was correct in law and sufficient for the instruction of the jury. *Filakosky* v. *Valente,* 175 Conn. 192, 195–96, 397 A.2d 95 (1978). We decide that the charge to the jury taken as a whole on the element of intent was erroneous for the reasons hereinafter set forth.

The defendant claims that the charge impermissibly shifted the burden of proof on the element of intent from the prosecution to him. Although not framed in constitutional language, this claim must be analyzed in light of the requirements of the Fourteenth Amendment as expressed in *Patterson* v. *New York,* 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); and *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); which held that shifting the burden of proof of an essential element to the defendant denies him the protections of the presumption of innocence and of due process of law. The defendant's assertion that the charge on intent shifted the burden of proof must therefore be analyzed for error in light of the fundamental constitutional rights at stake.

---

[1] The case to which the trial court referred is *State* v. *Hicks,* 169 Conn. 581, 586, 363 A.2d 1081 (1975). See footnote 8, infra.

The state must prove beyond a reasonable doubt that the accused possessed the intent to commit the crime charged. The defendant here was charged with *accessory to attempted robbery*. The statutes governing that crime are General Statutes §§ 53a-8,[2] 53a-49 (a) (2),[3] and 53a-134 (a) (2).[4] The accessory statute, § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to *aid* the principal *and* that in so aiding he intend to *commit* the offense with which he is charged. See LaFave & Scott, Criminal Law (1972), p. 505 n.53, § 64. The criminal attempt statute, § 53a-49 (a) (2), also has as an element the intent to *commit* the crime attempted. Finally, § 53a-134 (a) (2), robbery in the first degree, requires as an element of the crime the intent of the defendant to deprive another of property or to appropriate it to himself or a third person. See General Statutes §§ 53a-133 and 53a-119. In sum, the state in this case had to prove beyond a reasonable doubt that

---

[2] "[General Stautes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, *acting with the mental state required for commission of an offense,* who solicits, requests, commands, importunes or *intentionally aids* another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." (Emphasis added.)

[3] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . (2) is armed with a deadly weapon . . . ."

the defendant: (1) intended to aid the two principals in robbing the gas station, and (2) intended to deprive another of property.

This burden of proof on intent ordinarily can be borne only by the presentation of circumstantial evidence, because intention is a mental process that necessarily must be proved through inferences drawn from the defendant's statements and actions. *State* v. *Holley,* 174 Conn. 22, 25–26, 381 A.2d 539 (1977); *State* v. *Cofone,* 164 Conn. 162, 164–65, 319 A.2d 381 (1972).

The United States Supreme Court has recently held that a jury instruction on the element of intent that is worded in terms of a "presumption" and *not* of an "inference" without a *clear* instruction on the legal effect of the presumption is unconstitutional under the holdings of *Patterson* v. *New York,* supra, *Mullaney* v. *Wilbur,* supra, and *In re Winship,* supra. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). The instruction invalidated in *Sandstrom* (p. 513) read as follows: " 'The law presumes that a person intends the ordinary consequences of his voluntary acts.' " The jury instruction in this appeal, supra, is not distinguishable from the one invalidated in *Sandstrom* and is, therefore, unconstitutional.

*Sandstrom* demonstrates (pp. 513–19) that the impact upon the minds of a jury of such an instruction may be either to establish the defendant's intent as a conclusion, or to shift the burden of proof on the element of intent to the defendant. First, a conclusive presumption does more than shift the burden: it deprives the jury of any fact-finding function as to intent, and removes from the prose-

cution any requirement to go forward or to persuade, beyond a recital of events, let alone to *prove*. Id., 523. Second, as *Sandstrom* also concluded (p. 524), even an instruction on intent that does *not* amount to a *conclusive* presumption still would be unconstitutional, if the charge shifts the burden of proof to the defendant. "Because . . . [the] jury may have interpreted the judge's instruction as constituting either a burden-shifting presumption . . . or a conclusive presumption . . . and because either interpretation would have deprived [the] defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." Id. The instruction in *this* case not only parallels the condemned language in *Sandstrom*, but further offends by the use of the clause, "until some credible evidence comes into the case," because it is an explicit shifting of the burden to the defendant. Prior to *Sandstrom*, the use of this type of clause by itself had been condemned by several courts.[5] Under *Sandstrom*, the basic charge, without proper explanatory instructions on the legal effect of the presumption, is unconstitutional. Moreover, the addition of the explicit burden-shifting clause made the instruction all the more offensive.

[5] The cases drew the line of error between instructions on presumed intent that included the burden-shifting clause, which was held to create reversible error, and those without the clause, which were upheld. See *United States* v. *Robinson*, 545 F.2d 301, 305–306 (2d Cir. 1976) (combination of presumption and clause shifts burden); *United States* v. *Garrett*, 574 F.2d 778, 781–83 (3d Cir.), cert. denied, 436 U.S. 919, 98 S. Ct. 2265, 56 L. Ed. 2d 759 (1978) (forbidding use of instruction with clause unless impact inconsequential); *United States* v. *Chiantese*, 560 F.2d 1244, 1255 (5th Cir. 1977) (harmful error unless context of case outweighs); *Cohen* v. *United States*, 378 F.2d 751, 755 (9th Cir. 1967) (criticizing charge); see also *State* v. *Moye*, 177 Conn. 487, 418 A.2d 870 (1979), which was decided prior to *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979).

It was noted by the court in *Sandstrom*, supra, 518n, that the other instructions given did not remove the potential for harmful interpretation of the condemned instruction. The other instructions were general ones on the presumption of innocence and the state's burden of proving the crime beyond a reasonable doubt. "But," the court concluded, "this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied." Id.

Similarly, the other instructions given in *this* case are inadequate either to rectify the harm caused by the invalid portion of the charge *or* sufficiently to inform the jury on the element of intent. Where the charge clearly delineates the state's burden of proof on every element, including intent, the potential for confusing the jury is sufficiently reduced so as to avoid reversible error. Although the trial court here properly instructed the jury in a general way on the presumption of innocence and on the burden of proof, as had the *Sandstrom* trial court, all of its instructions on the element of intent were together insufficiently precise to compensate for the great damage incurred by the harmful portion.

Specifically, the court charged elsewhere on the element of intent as follows: On the intent of an accessory, the court's charge[6] was patterned on the

---

[6] "This charge of accessory is based on a statute which the legislature has enacted. And it provides as follows: its title is criminal liability for acts of another. A person acting with the mental state required for the commission of an offense who solicits, requests, commands, importunes or intentionally aids another person to engage

statute, § 53a-8, but was not specifically tied to the crime of attempted *robbery* itself; rather, it referred vaguely to "the offense" ("with the mental state required for the commission of an offense"; "criminality of intent and community of unlawful purpose"; "criminal intent and unlawful purpose"). Charges should be patterned on the relevant statute; 4 Wharton, Criminal Procedure (12th Ed. Torcia) § 540; however, the nature of the crime of accessory is such that a charge only on the *general* nature of being an accessory is not sufficient. The accessory, like the principal actor, must have the intent to *commit* the *specific* crime charged, in this case, attempted *robbery*. The trial court's instruction

---

in conduct which constitutes an offense, shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. The State must establish to your satisfaction that Mr. Robinson [sic] must have acted with the mental state required for the commission of the crime.

"The meaning of this phrase concerning the mental state that must be shown on the part of Mr. Harrison is explained by the following: to establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another, the State must prove criminality of intent and community of unlawful purpose. It is not enough that the accused committed acts which may in fact have aided the committing the criminal act. One who was present when a crime is committed, but neither assists in its commission nor shares in the criminal intent of the perpetrator, cannot be convicted as an accessory. Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime, must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and willfully assists the perpetrator of the offense in the acts which prepare for, facilitate or consummate. The words mental state required for the commission of an offense simply means that the person must act intentionally. . . . One may be an accessory even though not present actively aiding or being guilty of a positive act in the commission of an offense. Everyone is a party to an offense who actually commits the offense or does some act which forms part of the offense, if, of course, he has the criminal intent and unlawful purpose that I have already referred to."

failed to so specify.[7] Further, on the intent required for attempted robbery, the trial court's extensive instruction to the jury referred only to the intent of the two principals, Thompson and Carter, and did not link that requirement to the accessory, the defendant.

These portions of the charge did not cure the constitutional defect; in fact, by their vagueness, they served to weaken the charge on intent as a whole. We therefore hold that the jury instruction given in this case on the element of intent was erroneous not only under the conclusion and reasoning of *Sandstrom* v. *Montana,* supra, but also because the overall charge on intent did not sufficiently inform the jury on that element of the crime.

There is error,[8] the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[7] Nor did the trial court's brief reinstructions on the intent of an accessory to robbery clarify its original statements. They only repeated the vague references to "the offense," "the criminal act," etc., and referred back to the initial instruction.

[8] Our holding today does not require us to overrule *State* v. *Hicks,* 169 Conn. 581, 586, 363 A.2d 1081 (1975), where this court discussed a similar charge. *Hicks* is distinguishable from this case because there the defendant claimed a *different* error, i.e., that the charge constituted an impermissible comment on the defendant's failure to testify. In *Hicks* we did not conclude that the charge was invulnerable in all respects to all constitutional attacks.