The defendant was tried to the jury on a charge of larceny in the third degree in violation of General Statutes 53a-124.[1] The charge arose out of an alleged shoplifting[2]
incident that took place on October 14, 1978 in the Enfield Square Mall. The jury found the defendant guilty as charged. He now appeals the judgment of conviction, contending that there was insufficient evidence to support the verdict, that the court erred in its charge on the matters of ownership and intent, and finally that the court erroneously allowed rebuttal testimony when there was no contrary evidence to rebut. *Page 680 
The jury might reasonably have found that on October 14, 1978, at approximately 5:45 p.m., an employee of the Music World store in Enfield observed the defendant standing in the store near an assortment of Rolling Stones albums. The defendant thereafter called a female companion into the store and handed her the bag he was carrying. After ordering some Rolling Stones albums, the defendant left the store.
A second Music World employee testified that he had personally inspected the store's Rolling Stones collection at 4 p.m. Between that time and the defendant's departure from the store, no Rolling Stones albums had been sold. After the defendant left, there appeared to be some eight albums fewer in the Rolling Stones stock than at 4 p.m.
A short time later, an employee, who had followed the defendant from the store, observed him sitting in another part of the mall. He was opening records with Music World stickers on them and throwing the cellophane wrappers into the shrubbery behind him. Most of the records were Rolling Stones albums. The defendant was unable to produce a sales slip for the records. When asked to remain while security personnel were summoned, the defendant got up and left the mall. He was subsequently apprehended in the parking lot. The police took ten albums from him, eight of which were by the Rolling Stones.
Much of the discarded cellophane was subsequently retrieved. One of these wrappers contained a complete Music World sticker. The store manager identified this sticker as being from his Enfield store. He valued the ten records at seventy dollars. Finally, he testified that because of their physical condition, he was of the opinion that none of the records taken from the defendant had ever been played.
The defendant testified in his own behalf. He claimed that he had entered the Music World store with ten *Page 681 
albums that he brought with him from his home in Bristol. He had purchased the albums in various other stores, had tape recorded their contents, and was trying to return them for credit. None of them were originally purchased from the Enfield Music World store. Having unsuccessfully tried to exchange these records for a refund, the defendant left the store. It was at this time that he decided to remove the outer wrappers from his records and throw the cellophane into the bushes. He claimed that all of the records were used and pointed to a scratch on one of them as proof of this contention. The defendant's father corroborated that he had seen his son leave the house on October 14 with a bag of records.
 I
At the close of the state's case and again at the completion of trial, the defendant's counsel moved for a judgment of acquittal.[3] These motions placed in issue the quantum of the state's proof on the issue of ownership. The defendant contends that the state never proved that the records in question belonged to Music World, and that therefore an essential element of the larceny offense was missing. This assertion misperceives the significant inferences which may be drawn from circumstantial evidence, and misconstrues that portion of the court's charge concerning this important form of proof.
While the state readily concedes that no one saw the defendant take any records from the store, there was abundant, credible evidence which placed him in *Page 682 
the music store, near Rolling Stones albums offered for sale. Following the defendant's departure, the Rolling Stones album supply was noted to be markedly lower. Shortly afterwards, the defendant was found nearby removing the cellophane wrappers from a large supply of new Rolling Stones records. He had no sales slip for them. One of the retrieved wrappers bore the music store's pricing sticker. In finding the defendant guilty, the jury might reasonably have inferred from these proven facts that the records belonged to the music store and that the defendant had intentionally taken them without paying. This form of deductive reasoning was adequately explained by the court in its charge and is a perfectly proper function of the jury. "It is fundamental that `circumstantial evidence may be as cogent and convincing as direct evidence and may properly be found to outweigh conflicting direct evidence.'... `Circumstantial evidence is not only sufficient, but also may be more certain, satisfying and persuasive than direct evidence.'... `[Triers] must necessarily rely upon circumstantial evidence and are entitled to draw reasonable and logical inferences from all the facts.'" State v. Taylor, 153 Conn. 72, 78,214 A.2d 362 (1965), cert. denied, 384 U.S. 921,86 S.Ct. 1372, 16 L.Ed.2d 442 (1966).
In articulating the level to which circumstantial evidence must rise in order to stand as the basis of finding a fact for which there is no direct evidence, it is noted that "[e]vidence, whether direct or circumstantial, which convinces a jury beyond a reasonable doubt is all that is required. State v. Colonese,108 Conn. 454, 460, 143 A. 561 [1928]." State v. Dubina, 164 Conn. 95, 98, 318 A.2d 95 (1972). If a jury reasonably could conclude, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the circumstantial evidence establishes guilt beyond a reasonable doubt, then the circumstantial evidence *Page 683 
will be deemed adequate to sustain a verdict against a defendant. See State v. Saracino,178 Conn. 416, 419, 423 A.2d 102 (1979); State v. Chetcuti, 173 Conn. 165, 172, 377 A.2d 263 (1977); State v. Ruiz, 171 Conn. 264, 276-77, 368 A.2d 222
(1976). When exposed to this test, it is clear that there was adequate evidence furnished from which the jury might reasonably have inferred the store's ownership of the records held by the defendant. The charge in this connection was adequate[4] and there was no error in denying the defendant's motion to acquit.
 II
The defendant further contends that the charge with respect to ownership was inadequate and misleading. The court had described larceny and the concept of taking another's property.[5]
It then described the specific larceny offense of shoplifting.[6] The court *Page 684 
explained that the property claimed to have been stolen was records and that the state claimed that Music World had a greater right to possession of them than the defendant.[7] The court went on to explain that if the records were found by the jury to have been stolen, the jurors would have no difficulty in satisfying the further requirement that the records constituted merchandise offered or exposed for sale.[8] The defendant contends that the court's reference to not having difficulty in satisfying this element, in essence, took from the jury the entire issue of ownership. This is not so. The court's reference to having no difficulty plainly refers to the factual issue of whether the property was offered for sale by a mercantile establishment, a question that never was in issue. Basically, the jury here was confronted with the factual question of whether to believe the store employee's claim to ownership or the defendant's claim to ownership. Neither the character of the property nor the store's role as a mercantile establishment were ever in issue and the court's observations in this regard were quite correct.
 III
The shoplifting portion of the larceny statute, General Statutes 53a-119, provides that a prima facie presumption of intention to convert to one's own use may be established through the intentional concealment of unpurchased goods. The meaning of this *Page 685 
portion of the statute and the concept of the prima facie case were explained to the jury. The defendant contends that this portion of the charge, however, was in error, and violated his constitutional right to due process by shifting the burden of proof on intent to the defendant in violation of the principles articulated in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450,61 L.Ed.2d 39 (1979), and State v. Harrison,178 Conn. 689, 425 A.2d 111 (1979).
The trial court charged, in part, "that a prima facie case may be established if the evidence indicates to you that the defendant intentionally concealed unpurchased goods or merchandise.... If you conclude that such evidence has been shown, you are entitled to presume that such concealment was engaged in by the defendant with the intention of converting the article to his own use without paying the purchase price thereof.... If a prima facie case is established, the state no longer has to prove separately the elements of intention to convert to one's own use without paying for the article.... A prima facie presumption is not a conclusive presumption and there may be evidence that controverts it. If you find that such presumption has been controverted by other evidence, the burden then falls back upon the state to prove those elements for which proof was not required under the prima facie presumption. That is, the state must then prove that the defendant intended to convert the article to his own use without paying for it.
"Now the fact that you may find a prima facie presumption has been established does not mean that the burden of proving the defendant guilty beyond a reasonable doubt has been removed. Such a burden of proof is [always] also [sic] required to convict in a criminal case. You must determine from all the evidence, including the prima facie presumption, if *Page 686 
you find that it comes into operation, whether the defendant has been proven guilty beyond a reasonable doubt." (Emphasis added.)
State v. Harrison, supra, stands for the proposition that "a jury instruction on the element of intent that is worded in terms of a `presumption' and not of an `inference' without a clear instruction on the legal effect of the presumption is unconstitutional.... [Further,] the impact upon the minds of a jury of such an instruction may be either to establish the defendant's intent as a conclusion, or to shift the burden of proof on the element of intent to the defendant.... [E]ven an instruction on intent that does not amount to a conclusive presumption still would be unconstitutional, if the charge shifts the burden of proof to the defendant." (Emphasis added.) State v. Harrison, supra, 695-96. This is not the case here.
The court's charge made it perfectly clear that the state had the burden throughout, and in all events, of proving that the defendant intended to convert the article to his own use without paying for it.[9] If the jury found concealment, then such an intention might be presumed. The presumption was immediately qualified as not being conclusive, and the court stated, without any reference to burden shifting, that there might be other evidence (whether the state's or the accused's) *Page 687 
that might controvert it. The court then explained that if the evidence were controverted, the state's burden continued, as before, to establish each of the various elements as previously articulated.
If this were not enough, the court next charged that even the finding of the prima facie presumption did not mean that the state's burden of proving the defendant guilty had been removed. When the charge is viewed in its entirety, it is perfectly evident that not only was the legal effect of the presumption clearly and fully explained but also that the court was meticulous in avoiding language that would give rise to an inference that the burden had shifted to the defendant. Indeed, the court stated specifically that this was not the case.[10] The charge, as given, did not violate the defendant's constitutional rights nor the State v. Harrison precepts.
 IV
At the close of the defendant's presentation, the Music World manager testified briefly on the matter of the records' condition and certain scratches on one of them. The defendant contends that the court erroneously permitted this rebuttal testimony as there was no contrary evidence to rebut. This is not the case.
The defendant testified on cross-examination that he was familiar with the albums which, at this point in the trial, had been introduced as state's exhibits. He was asked to name them and, in so doing, he referred *Page 688 
to one as having a scratch on it.[11] This remark, of course, challenged the earlier evidence offered by the state that the records were new. This being the case, the state was entitled to offer rebuttal testimony explaining the kinds of scratches that might appear on the records, and whether the scratch was from a needle or was possibly ascribable to some part of the handling received in the record manufacturing process. This is exactly what the rebuttal witness described. Since it tended to contradict the inference raised by the defendant's earlier testimony, this evidence was the proper subject of rebuttal. State v. Fine,159 Conn. 296, 301, 268 A.2d 649 (1970).
 There is no error.
In this opinion SHEA and DALY, Js., concurred.