ALBERT ROKUS *v.* CITY OF BRIDGEPORT ET AL.
(11035)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued June 8—decision released August 9, 1983

*James E. O'Donnell,* with whom was *Daniel D. McDonald,* for the appellants (defendants).

*T. Paul Tremont,* with whom, on the brief, was *Robert R. Sheldon,* for the appellee (plaintiff).

SPEZIALE, C. J. The plaintiff, Albert Rokus, brought suit against the defendants, the city of Bridgeport and its employee, Rafael Gomez, for damages incurred

when the city's truck, driven by Gomez, struck the plaintiff. The case was tried to a jury which found in favor of the plaintiff against the defendants and awarded the plaintiff $275,000 in damages. The defendants have appealed from the trial court's judgment rendered on the verdict.

The jury reasonably could have found the following facts: On October 26, 1976, the plaintiff was employed at the Sikorsky Aircraft Corporation plant on South Avenue in Bridgeport. About 6:30 a.m. that day he drove to an employee parking area located at the southwest corner of the South Avenue and Barnum Dyke intersection. South Avenue carries traffic generally east and west; Barnum Dyke carries traffic north and south. They intersect at the western terminus of South Avenue and the northern terminus of Barnum Dyke, forming an "L" shape. In order to walk from the parking lot to the Sikorsky plant Rokus had to cross Barnum Dyke and proceed east along South Avenue to the entrance gate. As Rokus was crossing Barnum Dyke, Gomez was driving a dump truck, owned by the city, westerly on South Avenue. As Gomez turned left from South Avenue to Barnum Dyke the front of his truck struck the plaintiff and knocked him to the pavement. A critical issue at trial was the exact point of impact. The plaintiff alleged that he had already reached the southeast curb of the intersection when the truck mounted the curb and struck him as he stood on the sidewalk. The defendants denied that the truck had mounted the curb and claimed that the plaintiff's injuries resulted from his own negligence.

The defendants raise three claims of error on appeal: (1) that a photograph and a survey map of the intersection, offered by the plaintiff, should not have been admitted into evidence; (2) that the trial court erred in not allowing the defendants to introduce, on cross-

examination of a police officer, statements made at the scene by the defendant Gomez regarding the accident; and (3) that the trial court erred in excusing a juror from the regular panel and substituting an alternate during the first day of trial.

# I

## ADMISSIBILITY OF PHOTOGRAPH AND SURVEY MAP

At trial the plaintiff introduced a photograph and a survey map of the intersection of South Avenue and Barnum Dyke. Both exhibits were made well after the accident and both depicted an asphalt cap that the defendant city of Bridgeport had placed over the curbing at the southeast corner of the intersection. The defendants contend that because the plaintiff's case was founded on a claim that the truck mounted the curb at this point, and because both exhibits illustrate repairs to the curb, the jury reasonably might have inferred that the truck had in fact mounted the curb and struck the plaintiff. The city argues that the introduction of the exhibits is thus barred by the subsequent repair doctrine.

"It has long been the settled rule in this State that evidence of subsequent repairs is inadmissible to prove negligence or an admission of negligence at the time of the accident." *Carrington* v. *Bobb,* 121 Conn. 258, 262, 184 A. 591 (1936); see *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 155, 239 A.2d 493 (1968); *Gustafson* v. *Meriden,* 103 Conn. 598, 602, 131 A. 437 (1925); *Donovan* v. *Connecticut Co.,* 84 Conn. 531, 538, 80 A. 779 (1911). Connecticut's subsequent repair rule conforms with that of other jurisdictions. "At all events the courts do exclude, when offered as admissions of negligence or fault, evidence of remedial safety measures taken after an injury . . . ." McCormick, Evidence (2d Ed.) § 275; see also Fed. R. Evid. 407

("evidence of the subsequent [repair] is not admissible to prove negligence or culpable conduct"). The central question is the plaintiff's purpose in introducing the evidence. The doctrine bars evidence of subsequent repairs when offered to prove negligence. It does not exclude such evidence when offered to prove some other material issue. We have held, for example, that "[w]here control of premises is one of the issues in a case, such evidence is admissible to prove it." *Williams* v. *Milner Hotels Co.,* 130 Conn. 507, 510, 36 A.2d 20 (1944); *Staples* v. *Bernabucci,* 119 Conn. 443, 450, 177 A. 380 (1935); see McCormick, supra (noting many other situations in which evidence of subsequent repairs was admitted).

When the defendants objected to the introduction of the photograph and the survey map at trial, the plaintiff's attorney declared that his only purpose in introducing the exhibits was to demonstrate "the layout" of the intersection of South Avenue and Barnum Dyke. In response to the defendants' objection, the plaintiff's counsel explicitly stated that the exhibits were not intended as proof of the city's negligence or culpability. The trial court in overruling the defendants' objection based its decision to admit the photograph and the survey map on its finding that the exhibits were offered for a purpose "exclusive" of showing negligence.

Because the exact point of impact was critical to his case, it was entirely reasonable for the plaintiff to use illustrations of the accident scene. We find no indication from the record that the trial court erred in concluding that the photograph and the survey map were introduced solely to show the configuration of the streets and adjacent sidewalks rather than to show negligence. We hold therefore that the subsequent

repair rule is inapplicable[1] and that the court properly admitted the exhibits for the limited purpose offered.

The defendant now complains that the trial court did not instruct the jury that the evidence should be considered only for that purpose. The defendant did not, however, request a limiting instruction when the photograph and the survey map were admitted. Where a claimed error is not brought to the attention of the trial court, we will not review the claim on appeal absent special circumstances not demonstrated in this appeal. Practice Book § 3063; *Sands* v. *Sands,* 188 Conn. 98, 106, 448 A.2d 822 (1982); *Cahill* v. *Board of Education,* 187 Conn. 94, 99, 444 A.2d 907 (1982). Although it is the better practice for the trial court to instruct the jury whenever evidence is admitted for a limited purpose even when not requested to do so; see *Blanchard* v. *Bridgeport,* 190 Conn. 798, 463 A.2d 553 (1983); we cannot say that the trial court's failure to do so in this case was error.

---

[1] Because the plaintiff did not offer the exhibits to prove negligence, we need not decide whether the subsequent repair rule would bar their introduction if he had used them as proof of the city's negligence. We note, however, that the rule is based on narrow public policy grounds, not on an evidentiary infirmity. McCormick, Evidence (2d Ed.) § 275; comment, "Subsequently Remedying Strict Products Liability: *Cann.* v. *Ford,"* 14 Conn. L. Rev. 759 (1982). It presupposes that to admit evidence of subsequent repairs to an identified hazardous condition as proof of negligence penalizes the defendant for taking remedial measures. This discourages alleged tortfeasors from repairing hazards, thereby perpetuating the danger. This policy fosters the public good by allowing tortfeasors to repair hazards without fear of having the repair used as proof of negligence, even though it requires the plaintiff to make a case without the use of evidence of the subsequent repairs. The rule's purposes are furthered, however, only when the excluded evidence relates to repairs of a hazardous condition. In the usual case, the condition is recognized as being hazardous because it allegedly caused the plaintiff's injury. Where the subject of the repair is not the alleged *cause* of the injury, however, but is merely an effect or by-product of the injurious accident, the rule's public policy purposes are absent. In those situations the plaintiff's right to introduce reliable and probative evidence remains paramount.

## II
### ADMISSIBILITY OF STATEMENTS OF DEFENDANT GOMEZ

In presenting his case the plaintiff called the police officer, Julio Santos, who investigated the accident. On direct examination the plaintiff asked the officer if the defendant truck driver, when questioned at the scene, had said that he "could not see the victim Mr. Rokus in time before he struck him." Santos replied that the defendant had said that. On cross-examination the defendant tried to elicit the entire conversation from which that comment was excerpted:

"Q. And you talked to Mr. Gomez. He was still there.

"A. Yes.

"Q. Is that right?

"A. Yes.

"Q. And he told you, did he not, how this accident happened. Didn't he?

"A. Yes.

"Q. And what did he tell you?"

Before Santos responded, the plaintiff's counsel objected to the question on the grounds that the out-of-court statement of Gomez would be self-serving, and thus inadmissible. The trial court sustained the plaintiff's objection over the defendants' claim that they had a right to elicit the entire conversation in which Gomez told the officer that he did not see the victim in time to stop. The defendants now advance that same claim on appeal.

"It is an elementary rule of evidence that where part of a conversation has been put in evidence by one party

to a litigation or prosecution, the other party is entitled
to have the whole conversation, so far as relevant to
the question, given in evidence, including the portion
which is favorable to him." *State* v. *Savage,* 161 Conn.
445, 448, 290 A.2d 221 (1971); see *Sullivan* v. *Nesbit,*
97 Conn. 474, 477, 117 A. 502 (1922); *Clark* v. *Smith,*
10 Conn. 1, 5 (1833). "[T]he entire conversation in
which an admission was contained should be related
in order to prevent statements from being taken out
of context . . . ." *State* v. *Hicks,* 169 Conn. 581, 589,
363 A.2d 1081 (1975).

At trial, the plaintiff was able to introduce the out-
of-court statement of Gomez through Santos' testimony
because it constituted an admission by a party oppo-
nent. The statement was therefore exempted from the
rule barring hearsay evidence. *Ferris* v. *Polycast
Technology Corporation,* 180 Conn. 199, 204, 429 A.2d
850 (1980). The defendants, of course, could not avail
themselves of that exception, because in most circum-
stances Santos' recitation of the defendant Gomez' out-
of-court statement would be inadmissible hearsay
evidence when offered by the declarant. The principle
announced in *State* v. *Savage* and *State* v. *Hicks,*
however, is an independent exception to the rule
against hearsay. When a portion of a party's out-of-
court admission is placed in evidence by an opponent,
the party has a right to introduce other relevant por-
tions of the conversation from which it was excerpted,
irrespective of whether it is self-serving or hearsay.
*State* v. *Hicks,* supra, 589; 7 Wigmore, Evidence (3d
Ed.) § 2094. Thus, the trial court erred in not allowing
the defendant to introduce the entire conversation
between Santos and Gomez during cross-examination.[2]

---

[2] At oral argument the plaintiff contended that the defendants had failed
to lay a proper foundation for the introduction of the entire conversation
on cross-examination. He argued that because the defendants had not
shown, through Officer Julio Santos' testimony, that the admission was

The trial court's error, however, does not necessarily require reversal of the judgment. "The mere fact that the [evidentiary] ruling is erroneous does not entitle an appellant to relief; it must be both wrong and harmful." Maltbie, Conn. App. Proc. § 23; see *Saphir* v. *Neustadt,* 177 Conn. 191, 201, 413 A.2d 843 (1979).

Here, the record clearly indicates that the defendants suffered no prejudicial harm from the erroneous ruling. On further cross-examination by the defendants, Santos testified that the defendant Gomez had explained the entire course of events surrounding the accident and that Gomez' explanation went beyond the admission that he did not see the victim in time to stop. Later in the trial the defendant Gomez took the stand. On direct examination he related a full account of the accident, including that the victim "ran in front of [the] truck." Gomez also testified that this was the same account of the incident that he gave to Santos at the scene. In sum, the defendants introduced the entire conversation from which Gomez' admission was extracted. Although the trial court should have allowed

in fact part of some more extensive conversation, the trial court properly excluded the question.

We are not persuaded by that argument. It is true that the defendants' only representation that a longer conversation occurred was by reference to the police report, and that this reference was invalid because the police report was not yet in evidence. The transcript of Santos' testimony shows, however, that the defendant Gomez' admission was only a part of his explanation of how the accident happened. Thus, when the defendants' counsel asked Santos if Gomez had explained the accident, he was clearly referring to the same conversation from which the plaintiff had extracted the admission. The defendants therefore should have been allowed to elicit the conversation.

Undoubtedly, before one can introduce the entire conversation from which an admission was extracted, there must be some showing that the admission was in fact part of a larger conversation or statement. But where, as here, the entire course of the witness' testimony makes clear that the admission was not an independent and isolated statement, the proponent is not required to prove independently that which is already obvious.

the defendants to introduce the conversation on cross-examination of the police officer, the defendants' ability to bring forward that evidence, albeit at a later time and through a partisan witness, negates any inference that the court's error affected the verdict. As such, the error was harmless and does not warrant reversal. *Lancaster* v. *Bank of New York,* 147 Conn. 566, 571, 164 A.2d 392 (1960).

## III
### EXCUSING A JUROR FROM THE REGULAR PANEL

Following the lunch break on the first day of trial, one of the jurors, John Yoblonski, informed the court that he was acquainted with a potential witness. Yoblonski explained that while standing in the hallway during recess, he had recognized Officer Santos. The juror had approached Santos and had learned that he was going to testify in this case. The court questioned the juror about his relationship with Santos. Yoblonski said that he did not know the officer very well and that he had not seen him in three years. He added that he would not give any undue preference to the officer's testimony. The court then questioned Santos, who confirmed Yoblonski's statements. Santos added that Yoblonski had asked whether he should bring their acquaintance to the court's attention and that he, Santos, had suggested that Yoblonski notify the sheriff. The court then excused Yoblonski from the jury and substituted one of two alternates who had been chosen prior to trial. The defendant objected and now appeals from that ruling.

Section 51-243 (a) of the General Statutes authorizes the trial court in a civil case to add two jurors to the jury panel to serve as alternate jurors. Section 51-243 (d) provides that "[i]f, at any time, any juror shall, for any reason, become unable to further perform his duty,

the court may excuse him" and substitute an alternate juror as part of the regular panel. The determination of whether a juror is unable to perform his or her duty is committed to the trial court's sound discretion. "The right of the court, in a proper exercise of discretion, to discharge or reject a juror, of its own motion, for good cause, is generally recognized and obviously salutary." *State* v. *Parker,* 112 Conn. 39, 56–57, 151 A. 325 (1930); see *Bluett* v. *Eli Skating Club,* 133 Conn. 99, 105, 48 A.2d 557 (1946); *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 543, 131 A. 505 (1925).

Although the trial court did not explicitly state its reasons for excusing the juror, the record provides ample evidence of the court's considerations: the trial was in its first day; only two witnesses had been heard, and most of that testimony, all of which was heard by the alternates, related to the admissibility of illustrative evidence; the juror in question knew the officer well enough to approach him in the hallway despite not having seen him in three years; the juror asked for and followed the officer's advice about reporting their relationship to the court.

In reviewing claims that the trial court abused its discretion "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness; the ultimate issue is whether the court could reasonably conclude as it did . . . ." *Jacobsen* v. *Jacobsen,* 177 Conn. 259, 263, 413 A.2d 854 (1979); see Maltbie, supra, § 59. From our review of the record we cannot say that the trial court abused its discretion in excusing the juror.

There is no error.

In this opinion the other judges concurred.