STATE OF CONNECTICUT *v.* PAUL SHARP
(AC 15792)

Dupont, C. J., and O'Connell and Landau, Js.

Argued April 30—officially released August 19, 1997

*John S. Aissis*, special public defender, for the appellant (defendant).

*Ellen A. Jawitz*, deputy assistant state's attorney, with whom, on the brief, were *John T. Redway*, state's attorney, and *Timothy J. Liston*, assistant state's attorney, for the appellee (state).

*Opinion*

O'CONNELL, J. The defendant appeals from the judgment of conviction, following a jury trial, of larceny in the third degree as an accessory in violation of General Statutes §§ 53a-124 (a) (2)[1] and 53a-8.[2] The defendant claims that the trial court improperly (1) instructed the jury on the charge of accessory to larceny in the third

---

[1] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds one thousand dollars . . . ."

[2] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

degree, (2) denied the jury's request to rehear testimony, and (3) excused the court reporter from a portion of the voir dire proceedings. In addition, he claims that there was insufficient evidence to convict him. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Charles Marland was the owner and operator of the Saybrook Mini Storage, a self-storage warehouse with individual units located in Old Saybrook. In January, 1992, Marland and his wife Susan inventoried several storage units that were leased to persons who had failed to pay their rent. At the defendant's request, the defendant and his son accompanied the Marlands during the inventory. The Marlands opened unit 397, which was leased to Edward Buxton. Once inside, Charles Marland noticed that Buxton's unit contained several guns, some of which appeared to be very old, and boxes that contained antique lead soldiers. The Marlands also noticed various gun supplies in Buxton's unit, including balls and black powder. The defendant named some of the guns and said that one musket was worth a lot of money. The defendant told Charles Marland that he had a market for the guns and that the toy soldiers were valuable because they were in their original box and wrapping. The defendant asked Charles if he would sell the contents of Buxton's unit to him, but Charles declined and explained that he was required by law to sell the items at a public auction scheduled for January 18, 1992.

The defendant later asked Susan Marland to persuade Charles to sell him the guns. The defendant asked Michael Fuller to retrieve the guns and related items from Buxton's unit. Thereafter, and before the date of the auction, Michael Fuller, Peter Fuller and Elijah Pink broke into Buxton's storage unit. They opened a wooden cabinet and took several Civil War era rifles and a box of soldiers. They also broke into a number

of other units to make it look as if the units were randomly ransacked. All three men had worked for the defendant, and he and the Fullers were lifelong friends of his.

The defendant appeared at Michael Fuller's residence the morning after the burglary to pick up the rifles and soldiers. At some later time, the defendant told Michael Fuller that he sold the rifles to a businessman in Middletown for $1800. Michael Fuller received a share of the money from the sale of the guns. The Fullers and Pink sold the remaining items taken from other units to a junk collector.

## I

### A

The defendant first contends that he was deprived of his constitutional right to a fair trial because the trial court failed to instruct the jury adequately on the dual intent requirement of accessorial liability under § 53a-8, namely, (1) the intent to aid the principal and (2) the intent to commit the underlying offense. See *State* v. *Harrison*, 178 Conn. 689, 694, 425 A.2d 111 (1979). We do not agree.

During its charge to the jury, the trial court read § 53a-8 (a) in full.[3] In its further comments on the meaning of the statute and its application to the facts of the case, the trial court did not negate the essential meaning of the statutory language. This court has expressly held that "[t]he statute itself contains the dual intent language"; *State* v. *Foshay*, 12 Conn. App. 1, 24, 530 A.2d 611 (1987); and that reading the statute satisfied the defendant's constitutional right to a proper instruction. Id. *Foshay* is controlling here.

The defendant also argues that the trial court should have reiterated the intent requirement at the close of

_____

[3] See footnote 2.

its larceny instruction. We are not persuaded that failure to repeat a proper instruction constitutes error.

## B

The defendant also claims that the trial court deprived him of his constitutional right to a fair trial by failing to instruct the jury adequately that the value of the stolen property must exceed $1000. This claim is without merit.

This claim confuses the general instruction on larceny with the specific instruction on larceny in the third degree. The trial court did not include an instruction on value when it defined larceny pursuant to General Statutes § 53a-119. The court's instruction was correct because value is not an element of larceny under § 53a-119. Following its general instruction on larceny, the trial court proceeded to instruct the jury on larceny in the third degree and correctly informed the jury that in order to find the defendant guilty of that crime, it must find that the property had a value greater than $1000.

We conclude that the trial court adequately instructed the jury on the $1000 value element of larceny in the third degree.

## II

The defendant next claims that he was denied his constitutional right to a fair trial because the trial court refused to allow the jury to rehear the testimony of Peter Fuller. This claim fails on both the facts and the law.

The record shows that the jury requested a copy of Fuller's testimony and that the trial court explained that it was not possible to furnish a transcript, but that Fuller's testimony could be replayed or reread to them. The court further explained that because of the time it

would take to locate the testimony, it would be helpful if the jury could narrow its request. If the jury could not narrow the request, the court indicated a willingness to "do the whole thing." The jury returned to the deliberation room and a short time later, without having narrowed its original request, returned with a guilty verdict.

On the basis of this record, it is clear that the trial court did not refuse to allow the jury to rehear Fuller's testimony. Even if the trial court had refused to allow a reading of Fuller's testimony, the defendant would not have been entitled to a new trial. The portion of the record, if any, the trial court will allow read to the jury is wholly within the trial court's discretion. *State* v. *Harris*, 227 Conn. 751, 769–72, 631 A.2d 309 (1993). The defendant has failed to show that the trial court abused its discretion.

### III

The defendant next claims that he is entitled to a new trial because the individual voir dire proceedings were not transcribed. A defendant has a statutory right to have voir dire proceedings transcribed. General Statutes § 51-61 (a); *Giannotti* v. *Warden*, 26 Conn. App. 125, 128, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). This statutory right, however, may be waived. Id., 131. The defendant contends that the right to the transcription of voir dire is constitutional. The state argues that although Connecticut appellate courts have not established a constitutional right to transcription of voir dire proceedings, "[a] criminal defendant has the capacity to waive many of his or her fundamental procedural rights." *State* v. *Patterson*, 230 Conn. 385, 392, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996). "[N]o procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely

assertion of the right." (Internal quotation marks omitted.) Id., 393. The Supreme Court in *Patterson* held that a defendant may waive his right to the presence of a judge during the entire voir dire in criminal cases.[4] Id. The state claims that a defendant may likewise waive the right to have voir dire proceedings transcribed. Without reaching the issue of whether the right to the transcription of voir dire is constitutional, we agree that the defendant waived the right to the transcription.

The transcript does indicate, and the defendant concedes, that the defendant's trial counsel moved to excuse the court reporter during individual voir dire. Moveover, he does not indicate that any objections were made during the untranscribed proceedings. We conclude that the defendant waived his right to the transcription and, further, he has not persuaded us that any impropriety or prejudice occurred during the untranscribed proceedings.

IV

Finally, the defendant claims that the trial court improperly denied his motions for judgment of acquittal and for a new trial because there was insufficient evidence to convict him of accessory to larceny in the third degree. Specifically, the defendant claims that there was insufficient evidence that (1) the value of the items stolen exceeded $1000 and (2) the defendant wrongfully took the property from an owner within the meaning of General Statutes § 53a-118 (a) (5).

In reviewing claims of evidentiary insufficiency, we first "construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether on the facts so construed and the inferences reasonably

---

[4] Under its supervisory powers, the Supreme Court in *Patterson* required that after the date of that decision, the trial court judge must be present during voir dire in criminal cases. *State* v. *Patterson*, supra, 230 Conn. 400.

drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 541, 679 A.2d 902 (1996). We must determine whether, on the facts established and the inferences reasonably drawn therefrom, the jury could have reasonably concluded that the defendant was guilty of larceny in the third degree.

### A

"A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and . . . the value of the property or service exceeds one thousand dollars . . . ." General Statutes § 53a-124 (a) (2). The term "value" as used in this statute is defined as "the market value of the property or services at the time and place of the crime or, if such cannot be satisfactorily ascertained, the cost of replacement of the property or services within a reasonable time after the crime." General Statutes § 53a-121 (a) (1). Our Supreme Court has interpreted the term market value as the amount that a buyer would pay as the result of fair negotiations. *State* v. *Collette*, 199 Conn. 308, 313, 507 A.2d 99 (1986). The state contends that the price for which an item is actually sold is evidence of its market value. *State* v. *Frilando*, 182 Conn. 397, 400, 438 A.2d 413 (1980).

In this case, the jury reasonably could have found that, shortly after the burglary, the defendant sold the stolen rifles to a person in Middletown for $1800. We conclude that this evidence of the amount paid for the goods close to the time and place of the crime, was sufficient to prove that the value of the stolen items exceeded $1000.

### B

The defendant next claims that the evidence was insufficient to prove that the wrongful taking, obtaining

or withholding of property was from an owner within the meaning of § 53a-118 (a) (5). Section 53a-118 (a) (5) defines the term "owner" as "any person who has a right to possession superior to that of a taker, obtainer or withholder."

The defendant argues that this term does not include property that has been abandoned by the owner. This claim is without merit. Charles Marland had custody and control over the goods, and, accordingly, he had a right superior to that of the defendant. *State* v. *Crosswell*, 223 Conn. 243, 254, 612 A.2d 1174 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.